IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1999 SESSION

**FILED**

May 18, 1999

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9805-CR-00217 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. CHERYL BLACKBURN, |
| JUAN JEROME BRYANT, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Sentencing) |


FOR THE APPELLANT:                    FOR THE APPELLEE:


**DAVID A. COLLINS**                       **PAUL G. SUMMERS**
211 Printers Alley Bldg., 4th Fl.         Attorney General & Reporter
Nashville, TN 37201
                                          **MARVIN E. CLEMENTS, JR.**
                                          Asst. Attorney General
                                          John Sevier Bldg.
                                          425 Fifth Ave., North
                                          Nashville, TN 37243-0493


                                          **VICTOR S. JOHNSON, III**
                                          District Attorney General


                                          **SHARON BROX**
                                          Asst. District Attomey General
                                          Washington Square, Suite 500
                                          222 Second Ave. North
                                          Nashville, TN 37201-1649


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

# **O P I N I O N**

The defendant pled guilty to four counts of theft of property over ten thousand dollars ($10,000) but under sixty thousand dollars ($60,000), a Class C felony, and one count of theft of property over one thousand dollars ($1000) but under ten thousand dollars ($10,000), a Class D felony. Following a sentencing hearing, the trial court sentenced him as a Range I standard offender to five years in prison for each Class C felony and four years in prison for the Class D felony. The sentences on three of the Class C felonies were to run consecutively, with all other sentences running concurrently, for an effective sentence of fifteen years. The defendant now appeals, arguing that the trial court imposed an excessive sentence, erred in ordering some of the sentences to run consecutively, and erred in denying alternative sentencing. Finding no reversible error, we affirm.

According to the presentence report, the defendant sold several stolen vehicles to undercover police officers over a period of approximately two months. He was also observed looking under the hood of another stolen vehicle and "behaving strangely." When the defendant entered an open plea of guilty to these charges, several other pending charges were dismissed. The presentence report also reflects that the defendant has numerous prior convictions, including resisting arrest, two counts of driving with a suspended license, evading arrest, and criminal impersonation. He also has eighteen juvenile charges for which he either received pretrial diversion or an informal adjudication.

At the sentencing hearing, the defendant's mother testified that she knew the defendant sold marijuana "now and then" and had had several "odd jobs." Although

2

she has wanted her son to obtain a GED, she believed he was on a "get rich quick plan."

The defendant, who was twenty years old at the time of the crimes, testified he was expelled from high school in the tenth grade and had not obtained a GED. He admitted having several prior misdemeanor convictions, but some of the charges brought against him as a juvenile he claimed not to remember. He admitted burglarizing a train when he was a juvenile, and he also admitted having a prior adult probation term revoked because he was arrested on another charge. He testified that when he violated his probation, he spent twenty days in jail, which made him realize he did not want to do anything that would cause him to return to jail. Yet, he admitted that since he had spent time in jail, he had committed other misdemeanor crimes, and he explained his recent actions of selling stolen cars as "slipp[ing] through the system."

He admitted selling marijuana for the past two to three years, but he denied selling it since the birth of his son, which was shortly after the crimes in the instant case were committed, and he denied ever using it. When asked to divulge the name of the individual who sold marijuana to him, he initially refused, but then identified him only as "Chuck." He testified that part of his bond money came from selling marijuana.

He denied ever stealing cars, instead insisting that he only sold the stolen cars as part of a sting operation. He testified he sold the stolen cars in order to buy necessary care items for his son, but he also admitted using his profits to help make bond in the instant case. He admitted that the trial court judge should not believe he could abide by the terms of probation given his criminal history, but he maintained that he had changed since his son was born.

3

The defendant testified his longest employment lasted four months, even though the presentence report reflects no verifiable employment at all. He admitted not being candid by not disclosing prior employment at the Tennessean when he completed a form for the preparer of the presentence report, explaining that he had only worked at the Tennessean for two or three days and was afraid the short length of his employment would reflect poorly upon him. He also testified he had been employed at an Exxon gas station at Harding Place and Harding Road for the past two months and that he continued to work there. He did not bring any pay stubs as proof of employment, but he testified that the name of the store manager, his supervisor, was David West, and he provided the court with a phone number where West could be reached.

The final witness at the sentencing hearing was Barry Tidwell, a court officer. Tidwell testified he called the phone number provided by the defendant, which was actually a beeper number. He testified an individual who sounded young and identified himself as David West returned his call and confirmed that the defendant worked for him for "a little while." When asked to define "a little while," West answered "maybe a month or two." According to Tidwell, West confirmed the location of the Exxon station and that he was the manager. Tidwell testified that after his conversation with West, he called the phone number listed in the phone book for the Exxon station at Harding Place and Harding Road. Tidwell testified he spoke with an employee who confirmed that West worked there but was not the manager and that the manager, who was female, was not on the premises at the time. According to Tidwell, the employee also stated that no person named "Juan Bryant" was employed at the station.

At the conclusion of the sentencing hearing, defense counsel asked the trial court to consider the defendant's youth as a mitigating factor. In determining the

defendant's sentences, the trial court first applied the following enhancement factors to all counts: (1) that the defendant has a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) that the defendant was a leader in the commission of the offense involving two or more criminal actors; and (20) that the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if convicted as an adult. See T.C.A. § 40-35-114(1), (2), (20). The trial court gave enhancement factors (1) and (20) "very great weight." To all case numbers except 2082, the trial court applied enhancement factor (8), that the defendant has a previous history of unwillingness to comply with the condition of a sentence involving release in the community, which the trial court gave "great weight." See T.C.A. § 40-35-114(8). The trial court also gave "great weight" to enhancement factor (13), that the felony was committed while he was on a form of release status, which the trial court applied to all case numbers except 2083. See T.C.A. § 40-35-114(13). The only mitigating factor found, which applied to all cases, was (1), that the defendant neither caused nor threatened serious bodily injury. See T.C.A. § 40-35-113(1). Based on these findings, the trial court imposed a five year sentence for case numbers 2082, 2083, 2084, and 2085 and a four year sentence in case number 2696.

With regard to whether the sentences would run concurrently or consecutively, the trial court found that the defendant had an extensive criminal history and was a professional criminal who knowingly devoted his life to criminal acts as a major source of livelihood. The trial court also found that consecutive sentencing related to the severity of the offenses and was necessary to protect the public. The trial court found that case number 2083 must run consecutively to the other cases because the defendant was released on bail in that case when he committed the other offenses. Based on this, the trial court imposed an effective sentence of fifteen years by ordering case number

5

2082 to run consecutively to all cases, case number 2083 to run consecutively to all cases, and case numbers 2084, 2085, and 2696 to run concurrently with each other but consecutively to case numbers 2082 and 2083.

Because of the length of the sentence imposed, the trial court found that the defendant was not eligible for probation. Moreover, the trial court found that confinement was necessary to protect society, that confinement was necessary to avoid depreciating the seriousness of the offense, that confinement would provide an effective deterrence to others, and that measures less restrictive than confinement had been frequently or recently applied to the defendant without success. Further, the trial court found that the defendant had "no understanding" of how his crimes affected the victims and that he was a "walking crime wave." In so finding, the trial court denied the defendant alternative sentencing.

The defendant first argues that the imposed sentence is excessive. Specifically, he claims that there is no proof in the record to support application of enhancement factor (2), that he was a leader in the commission of an offense involving two or more criminal actors. See T.C.A. § 40-35-114(2). In applying this enhancement factor, the trial court found that the defendant met with the undercover police officers "and was mainly involved in negotiating things." The record supports this finding. Thus, this enhancement factor was properly applied to all convictions.

The defendant also contends that the record does not support the application of enhancement factor (20), that he was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, because the presentence report fails to reflect any juvenile adjudications at all. See

6

T.C.A. § 40-35-114(20). The State concedes, and the record reflects, that the defendant's juvenile acts that would have constituted felonies if committed by an adult were not adjudicated, but rather were resolved by pretrial diversion or dismissal. As such, there is no basis upon which to apply enhancement factor (20).

Additionally, the defendant argues that the trial court erred in failing to mitigate his sentence on the basis that he lacked substantial judgment because of his youth. The record shows only that the defendant was twenty years old at the time he committed the crimes in this case. The record fails to show that his youth caused him to lack substantial judgment. The defendant also argues the trial court erred in failing to mitigate his sentence on the basis that he was motivated by a desire to provide necessities for his family. The record shows that the defendant committed these crimes before his son was born and that the trial court judge questioned what "necessities" the defendant sought to provide for his unborn son. The record also indicates that the defendant had the ability to obtain employment, but that he chose instead to sell marijuana and stolen cars while allowing his mother to financially support his child. Given this, the trial court did not err in refusing to apply these mitigating factors.

Even though the trial court erred in applying enhancement factor (20), the defendant has not carried his burden of showing that the imposed sentence is excessive, given the number of applicable enhancement factors, the heavy weight placed on enhancement factors (1), (8), and (13), and the little weight accorded to mitigating factor (1). See T.C.A. § 40-35-401(d) Sentencing Commission Comments. Moreover, the record reflects that in applying the applicable enhancement and mitigating factors, the trial court properly began at the minimum sentence in the range, first enhancing the sentence as appropriate and then mitigating the sentence as appropriate. See T.C.A. §

40-35-210(e).  No reversible error has been shown.

The defendant next complains that the trial court erred in ordering consecutive sentences.  He does not challenge the trial court's determination that case number 2083 must run consecutively because he was released on bail in that case when he committed the other offenses. Rather, he argues that with respect to the other consecutive sentences, the trial court erred in finding him to be a professional criminal and to have an extensive criminal record.

A trial court has the discretion to order consecutive sentences by finding by a preponderance of the evidence that one of various circumstances apply. <u>See</u> T.C.A. § 40-35-115(b).  Two of those circumstances are if the defendant "is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood" or if the defendant "is an offender whose record of criminal activity is extensive."  T.C.A. § 40-35-115(b)(1), (2).  Either of these findings, plus findings that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offenses committed, will justify consecutive sentencing. <u>See</u> <u>State v. Wilkerson</u>, 905 S.W.2d 933, 938 (Tenn. 1995).

Here, the record reflects that the defendant has chosen to make money through criminal acts, even though he is capable of earning a legitimate salary.  Although he was twenty-one years old at the time of the sentencing hearing and left high school early, he testified that his longest length of employment was four months.  The presentence report officer, however, could not verify any employment at all.  The only verifiable income came from the defendant's criminal acts, and he admitted using those

8

proceeds to make bond in this case. Given these circumstances, the trial court did not err in finding that the defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. See T.C.A. § 40-35-115(b)(1).

Alternatively, given that the defendant, only twenty years old at the time he committed the instant crimes, has six prior convictions as an adult, admitted selling marijuana for two or three years, and admitted several criminal acts as a juvenile, the record supports the trial court's finding that the defendant has an extensive record of criminal activity. See T.C.A. § 40-35-115(b)(2). Moreover, the record supports the trial court's findings that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that consecutive sentencing reasonably relates to the severity of the offenses committed. Thus, the defendant's challenge to his consecutive sentences must fail.

As a corollary, the defendant complains that his codefendant received a shorter effective sentence than he did. Attached to the defendant's motion to alter his sentence are his codefendant's judgments, which reflect his codefendant was convicted on the same charges and sentenced, by a different trial court judge, to five years on each Class C felony and four years on the Class D felony, like the defendant. However, his codefendant's sentences were ordered to run concurrently, with thirty days in a workhouse and the balance in the community corrections program. The defendant complains his and his codefendant's sentences are unfairly disparate and that his codefendant is more deserving of consecutive sentencing because his codefendant's prior criminal record is more extensive and reflects more serious crimes.

The defendant properly asserts that one of the purposes of the Criminal

9

Sentencing Reform Act of 1989 is to eliminate "unjustified disparity in sentencing." T.C.A. § 40-35-102(2). He has not shown, however, how any disparity between his sentences and his codefendant's sentences might be unjustified. The record in this case does not contain any indication of whether the codefendant's sentences were negotiated, what proof was presented at the codefendant's sentencing hearing, and what findings were made by the trial court judge who sentenced the codefendant. Even if the record did contain such information, the defendant has not shown reversible error because mere disparity in two different trial judge's sentences should not cause this Court to disturb one of the sentences when the record contains ample proof to support it. Thus, the defendant's argument must fail.

Finally, the defendant argues the trial court erred in denying him alternative sentencing because he was eligible for the community corrections program. Although the defendant appears to be eligible to participate in the community corrections program under T.C.A. § 40-36-106(a), mere eligibility does not equate with entitlement. See State v. Grigsby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997)(citing State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990)).

The trial court specifically found, inter alia, that confinement was necessary to protect society by restraining a defendant with a long history of criminal conduct and that measures less restrictive than confinement have frequently or recently been applied to the defendant without success. See T.C.A. § 40-35-103(1)(A), (C). The record shows that the defendant has frequently engaged in criminal behavior. He was involved in the pretrial diversion program as a juvenile and admitted that he continued his criminal activities because "it was something to do at the time" and he could "get away with it without great punishment." As an adult, he continued to commit crimes and received

10

suspended sentences, time served, and probation, which was revoked when he was charged with new offenses. He spent twenty days in jail on a prior offense and testified that it had an impact on him, but when asked to explain why he then committed the offenses in the instant case, he replied only that he "just slipped through the system." He even testified that based on his prior behavior, the trial court judge should not believe that he could abide by the terms of release. This evidence amply supports the trial court's findings.

Moreover, lack of candor reflects poorly on a defendant's potential for rehabilitation, which is a relevant consideration in determining whether alternative sentencing is appropriate. T.C.A. § 40-35-103(5); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). Here, the defendant admitted withholding employment information from the officer who prepared the presentence report. It also appears he misrepresented to the court that he was employed at Exxon at the time of the sentencing hearing. Given all of the circumstances in this case, a sentence of confinement was justified.

In sum, the defendant has not shown reversible error with regard to the length of the sentences imposed by the trial court. Moreover, the record supports the consecutive nature of his sentences and the trial court's denial of alternative sentencing. Accordingly, the defendant's sentences are affirmed.

_____
JOHN H. PEAY, Judge

11

CONCUR:


_____
DAVID H. WELLES, Judge


_____
J. CURWOOD WITT, JR., Judge