**STATE of Tennessee, Plaintiff–Appellee,**

v.

**Timothy Michael WILKERSON,
Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

Aug. 21, 1995.

Charles W. Burson, Attorney General and
Reporter, Kimbra R. Spann, Assistant Attor-

ney General, Nashville, C. Phillip Bivens, District Attorney General, Dyersburg, Rose Mary Drake, Assistant District Attorney General, Nashville, for plaintiff-appellee.

Martin L. Howie, Charles Agee, Jr., Dyersburg, for defendant-appellant.

## OPINION

REID, Justice.

Timothy Michael Wilkerson appeals his classification as a dangerous offender upon pleas of guilty to driving a motor vehicle on a revoked license, vehicular homicide, and four charges of vehicular assault, and the imposition of a consecutive sentence for the vehicular homicide conviction. The case is remanded to the trial court for resentencing.

Even though the appellant agreed to stipulate at the sentencing hearing that he was a dangerous offender within the meaning of Tenn.Code Ann. § 40–35–115(4) (1990), the trial judge found him to be a dangerous offender on the proof, and sentenced him to serve 20 days on the charge of driving on a revoked license, three years on each charge of vehicular assault, to be served concurrently, and four years as a standard offender, Range I, on the charge of vehicular homicide, to be served consecutive to the vehicular assault sentences. The total effective sentence was seven years.

■ The appellant contends that the record does not support the finding that he is a dangerous offender, and, therefore, the trial judge erred in imposing a consecutive sentence. He relies on *State v. Woods*, 814 S.W.2d 378 (Tenn.Crim.App.1991). The State responds that *Woods* should be overruled as contrary to the statute, and further, that the appellant fits the definition of dangerous offender even under *Woods*. The burden of showing that the sentence is improper is upon the appellant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

■ This Court's review of sentencing is prescribed by the Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. § 40–35–117 (1990). The procedure was summarized in *State v. Jones*, 883 S.W.2d 597, 599–600 (Tenn.1994):

> To facilitate meaningful appellate review, the Act provides that the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn.Code Ann. § 40–35–210(f) (1990).... Where the trial court has complied with these provisions of the statute, the sentence is reviewed *de novo* with a presumption of correctness. Tenn.Code Ann. § 40–35–401(d) (1990).

The trial judge in this case performed on the record a careful analysis of the facts, the enhancing and mitigating factors, and the principles of sentencing. Accordingly, review by this Court is *de novo* with a presumption of correctness under Section 40–35–401(d), which states,

> When reviewing sentencing issues ... the appellate court shall conduct a *de novo* review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct.

The presumption of correctness imposes upon the appealing party the burden of showing that the sentence rendered is improper. The Sentencing Commission Comments to Section 40–35–401 state,

> The primary change from prior law is that appellate review, while still *de novo*, must be conducted with "a presumption that the determinations made by the court from which the appeal is taken are correct." Therefore, the burden of showing that the sentence is improper is upon the appealing party.

In reviewing the sentence imposed, the Court must review separately the factual findings

and the legal conclusions of the trial court. Appropriate deference must be given to the trial court's factual determinations based on the testimony of witnesses heard in open court. However, the appellate court must make an independent analysis of the relevant legal issues and the conclusions of fact and law. Unless this review and analysis of the record show that the punishment imposed is improper, the judgment of the trial court will be affirmed. If the reviewing court finds, as in this case, that the sentencing principles applicable to the facts and circumstances of the case were not considered by the trial judge, remand for resentencing is the appropriate relief.

Prior to passage of the Tennessee Criminal Sentencing Reform Act of 1989, there were no statutory guidelines for a trial judge to use in determining whether to impose concurrent or consecutive sentences. Consequently, the Court in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), set forth some standards for imposing consecutive sentences. The Court, relying upon provisions of the Model Penal Code, began by stating the underlying principle:

> Essentially, a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant.

*Id.* at 393. In *Gray*, the Court defined five classifications of offenders for which consecutive sentencing should be reserved: persistent offenders, professional criminals, multiple offenders, dangerous mentally abnormal persons, and dangerous offenders. The Court defined a "dangerous offender" as one whose crimes,

> indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.

*Id.* However, the Court stated further:

> The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed.

*Id.* Consequently, under *Gray*, a defendant could be found to be a dangerous offender subject to consecutive sentencing only upon the initial finding that consecutive sentences are necessary to accomplish the underlying purpose of protecting the public from further criminal conduct by the defendant, and the further findings that the defendant's offenses indicate that "he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high," and that the offenses involve aggravating circumstances in addition to the fact that two or more dangerous crimes were committed.

In *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn.1987), the Court expanded the classifications appropriate for consecutive sentencing to include "defendants convicted of two or more statutory offenses that involve sexual abuse of minors." The Court held:

> Trial courts should weigh the aggravating circumstances arising from the relationship between defendant and the victim or victims, the age of the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual physical and mental damage to the victim or victims and determine the appropriate use of consecutive sentencing accordingly, bearing in mind the general objectives set forth in *Gray*.

*Id.* The Court then added the cautionary note applicable to all cases:

> Obviously, no rigid formula for application to such cases would be appropriate, but we caution that consecutive sentences should not routinely be imposed in sexual abuse cases, or in other cases, and that the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved. *See* ABA Standards for Criminal Justice, Second Edition § 18–4.5.

*Id.*

These decisions, *Gray* and *Taylor*, were the only guidance available for imposing con-

secutive sentences until the enactment of the Criminal Sentencing Reform Act of 1989. The Act set forth the statutory criteria for concurrent and consecutive sentencing found in Section 40–35–115.

(a) If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section.

(b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

(c) The finding concerning the imposition of consecutive or concurrent sentences is appealable by either party.

(d) Sentences shall be ordered to run concurrently, if the criteria noted previously in this section are not met, unless consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure.

Tenn.Code Ann. § 40–35–115.

The Act did not invalidate the decisions in *Gray* and *Taylor*. In fact, the Sentencing Commission Comments indicate that the Act was intended to codify the standards set forth by the Court in those cases and expand the classifications to other cases considered by the legislature to be deserving of extended sentences.

This statute is essentially a codification of two Tennessee supreme court cases dealing with concurrent and consecutive sentencing: *Gray v. State*, 538 S.W.2d 391 (Tenn.1976) and *State v. Taylor*, 739 S.W.2d 227 (Tenn.1987). In *Taylor*, the court held that consecutive sentences should not routinely be imposed in criminal cases and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved. While this section permits consecutive sentencing, the trial judge has other available options, such as increasing the length of their sentence within the appropriate range depending on the presence of enhancement factors. However, where appropriate, consecutive sentences are authorized in the discretion of the court if the court finds one or more of the criteria as set forth in subsection (b). The first four criteria were taken directly from *Gray v. State, supra*, and the fifth was derived from *State v. Taylor, supra*. The sixth and seventh criteria were added by the General Assembly in 1990....

Tenn.Code Ann. § 40–35–115 Sentencing Commission Comments (1990).

The statute identifies in subsections (b)(1–5) those offenders who may be incarcerated for an extended time in order to protect the public against further criminal conduct, it defines in subsections (b)(6) and (7) two additional categories of offenders deserving of

extended sentences, and it provides in subsection (d) that sentences shall be ordered to run concurrently if the criteria noted in those prior subsections are not met. The statutory definition of dangerous offenders was taken from *Gray v. State:* offenders "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high...." Tenn.Code Ann. § 40–35–115(b)(4).

The first issue is whether the record supports the trial judge's finding that the appellant is a dangerous offender, subject to consecutive sentences.

The offender in this case was a 27–year-old third year law student at Memphis State University. At the time of the offense, he had no prior criminal record. However, in the three months preceding the offense, his family and friends noticed that he had changed from a somewhat reserved, responsible person to one who talked incessantly, related ideas which bordered on the bizarre, and began drinking intoxicants excessively. He was arrested for driving under the influence on January 11, 1992. Two weeks before the accident which gave rise to the indictment and convictions, the appellant, at the urging of his family, was seen by a psychiatrist. The results of tests performed did not become available until after the offense in this case had been committed, but the appellant was diagnosed as manic-depressive and placed on medication. As the result of treatment, he began functioning normally again prior to the sentencing hearing. The length of time during which his conduct was not responsible and law abiding, was less than four months.

However, on the morning of March 14, 1992, the appellant, while driving north in the south bound lanes of U.S. Highway 51, struck another vehicle head-on. The appellant was intoxicated. One adult passenger in the other vehicle was killed, another passenger incurred permanent and seriously debilitating injuries, and the remaining passengers sustained minor injuries. Prior to the accident, the appellant's driver's license had been revoked for failing to pay a fine for a traffic violation.

The appellant entered guilty pleas to all of the charges and submitted to the court for sentencing. As stated previously, the trial court sentenced the appellant to four years on the vehicular homicide conviction, to be served consecutive to the three year concurrent sentences on the vehicular assault charges.

 The appellant first contends that he is not a dangerous offender according to the definition stated in Tenn.Code Ann. § 40–35–115(b)(4). He apparently concedes the trial court's finding that his behavior indicates little or no regard for human life, but contends that adjudication as a dangerous offender also requires a finding that he had no hesitation about committing a crime in which the risk to human life is high. This same measure of culpability, stated as an enhancement factor in Tenn.Code Ann. § 40–35–114(10), was discussed by the Court in *State v. Jones,* 883 S.W.2d 597, 602 (Tenn.1994):

> The determinative language of this factor is "the risk to human life was high."

And further:

> As a practical matter, hesitation or lack of hesitation does not submit readily to proof because of its subjective nature. The more logical interpretation of this enhancement factor places the emphasis on "risk to human life was high."

*Id.* "Lack of hesitation" is semantically close to "reckless indifference" and signifies a conscious lack of concern for foreseeable consequences. The defendant's conduct in this case demonstrated an indifference to the high probability of calamitous consequences to himself and the motorists whom he was certain to encounter as he drove in the wrong direction on a heavily travelled divided highway while intoxicated. He created a high risk of death or serious bodily injury to every motorist on that road. Death or serious bodily injury was almost inevitable. His conduct clearly satisfies the condition stated in

Tenn.Code Ann. § 40-35-115(b)(4) and defines the defendant as a dangerous offender.

The State says that proof of this requirement is all that is necessary to support the imposition of consecutive sentences. The appellant says that *Gray* and *Taylor* require the further findings that consecutive sentences are necessary to protect the public against further criminal conduct, that aggravating circumstances exist, and that the aggregate length of the sentences reasonably relates to the offenses of which the appellant was convicted. The appellant relies upon the analysis of the statute and prior decisions of this Court made by the Court of Criminal Appeals in *State v. Woods*, 814 S.W.2d 378, 380 (Tenn.Crim.App.1991). The decision in *Woods* is approved only to the extent that it applied the principles set forth in this opinion.

As stated above, the Act essentially codified the holdings of the Court in *Gray* and *Taylor*. Section 40-35-115 requires proof of particular facts defining an offender subject to consecutive sentences. The rationale for consecutive sentences stated in *Gray* and *Taylor* is that they be reasonably related to the severity of the offenses committed and serve to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct. This statement of principle cannot be separated into a set of discrete findings of fact which in every case would justify the imposition of consecutive sentencing. It does, however, recognize those limitations on consecutive sentencing established by the Court, that consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant.

Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of Section 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. In addition, the Sentencing Reform Act requires the application of the sentencing principles set forth in the Act applicable in all cases. The Act requires a principled justification for every sentence, including, of course, consecutive sentences. *See* Tenn.Code Ann. §§ 40-35-102(1); 40-35-103(1)(2); 40-35-113; 40-35-114 (1990 & Supp.1994). Unfortunately for ease of application, "sentencing is inescapably a human process that neither can nor should be reduced to a set of fixed and mechanical rules." [1]

It appears from the record that even though the trial judge performed a careful analysis of the facts, the enhancing and mitigating factors and the principles of sentencing, the trial judge, considered that proof that the defendant was a dangerous offender was sufficient basis on which to impose consecutive sentences. In imposing a consecutive sentence on the conviction for vehicular homicide, the trial judge stated:

> The court finds that the vehicular homicide case should run consecutively to the others and that the others should run concurrently with each other. In that regard, the court finds that the proof in the record indicates and as, basically, has been stipulated, Mr. Wilkerson is a dangerous—was a dangerous offender, and there was little or no regard for the value of human life. Therefore, consecutive sentencing would be appropriate insofar as the vehicular homicide case is concerned.

---

1. 3 American Bar Association Standards for Criminal Justice, Sentencing Alternatives and Procedures, p. 18.11 (2nd ed. 1986).

As previously stated in this opinion, the imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

Consequently, this case is remanded to the trial court for resentencing pursuant to the principles recognized in this opinion.

The costs are taxed to the State.

ANDERSON, C.J., DROWOTA, J., and FONES and HOLDER, Special Judges, concur.