# IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

### NOVEMBER 1997 SESSION



**FILED**

February 25, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9701-CR-00016 |
| | ) | |
| vs. | ) | Hamilton County |
| | ) | |
| **AMOS LEWIS JONES,** | ) | Hon. Douglas A. Meyer, Judge |
| | ) | |
| Appellant. | ) | (Aggravated robbery; aggravated |
| | ) | rape; especially aggravated |
| | ) | kidnaping; theft) |
| | ) | |

FOR THE APPELLANT:

CLAYTON M. WHITTAKER
515 Pioneer Bank Building
801 Broad Street
Chattanooga, TN 37402

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

SANDY C. PATRICK
Asst. Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

WILLIAM H. COX, III
District Attorney General

C. LELAND DAVIS
Asst. District Attorney General
Suite 300, Courts Building
Chattanooga, TN 37402

OPINION FILED: _____

**AFFIRMED**

**CURWOOD WITT, JUDGE**

**OPINION**

The defendant, Amos Lewis Jones, appeals from the sentencing judgment of the Hamilton County Criminal Court. The defendant's six convictions resulted from guilty pleas. The trial court sentenced the defendant to maximum Range I terms of four years for theft, twelve years for each of two counts of aggravated robbery, and 25 years each for one count of especially aggravated kidnapping and two counts of aggravated rape. The three twenty-five year sentences were plea-bargained to run concurrently to each other, but the trial court set the sentences for theft and aggravated robbery to run consecutively to each other and consecutively to the twenty-five year aggregate sentence for the kidnapping and rape charges, yielding a total effective sentence of 53 years. The defendant appeals only the consecutive sentencing aspect of the trial court's judgment. Upon our review of the case, we affirm the judgment of the trial court.

The defendant was sixteen years of age when the underlying offenses were committed on September 30 and October 1, 1994.[1] He had spent a major portion of his teenage years in the custody of the Department of Youth Development. His prior criminal record consisted of fifteen juvenile court adjudications, including convictions for assault, evading arrest, escape, possession of a weapon on school grounds, two first-degree burglaries, two unauthorized uses of vehicles, and six thefts.[2] The defendant, a sixth-grade dropout, had never submitted a job application and had never been employed, although he had been released from the Department of Youth Development on one occasion for as long as five months and had acquired some carpentry and masonry skills while in department custody.

The record shows that the crimes were committed during a two-day

---

[1]The defendant reached the age of seventeen on December 24, 1994. His cases were transferred to criminal court from juvenile court.

[2]A fifteenth adjudication was for an unspecified offense.

2

period in which the defendant was attempting to demonstrate his criminal prowess in order to be promoted, or "get [his] ranks built up," as a member of a street gang known as the "Crips." During this test, the defendant, armed with his twelve-gauge shotgun and accompanied by the gang leader, undertook a crime spree that resulted in the armed robbery of two individuals and the abduction and multiple rapes of the second of the robbery victims, a female. At one point, this victim was raped simultaneously by the defendant and his accomplice. Afterward she jumped or was thrown from the assailants' car, and the car ran over her foot as the defendant's accomplice drove away.

The trial court sentenced the defendant to the maximum sentences allowed within Range I for each offense.[3] The court found three bases to support consecutive sentencing. It found (1) that the defendant was a professional criminal, "knowingly devot[ing his] life to criminal acts as a major source of livelihood," (2) that he had an extensive record of criminal activity, and (3) that he was a dangerous offender "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(1) (1997).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If

---

[3]The court found these sentences were justified by the presence of seven enhancement factors. See Tenn. Code Ann. § 40-35-114(1), (5), (7), (8), (9), (10), and (21) (1997) (the court applying factor (9), that a firearm was used, only with respect to the rape and theft convictions).

3

appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Upon our review of the record, we find that the trial judge's sentencing determinations merit the presumption of correctness, and further we find that the record supports the trial court's decision with respect to all three consecutive-sentencing bases. The finding of professional criminality under section 40-35-115(b)(1) is supported by the proof that this defendant, although young, had never been employed and had never applied for a job despite having quit school in the sixth grade. He indicated that he and his unemployed girlfriend lived together, supported only by help from well-meaning friends. The lack of a work record, together with an "extensive criminal record, including several theft related offenses, lead[s] the court to believe that the Defendant has turned to crime for a major source of his livelihood." State v. Jason Morin, No. 02C01-9512-CR-00370, slip op. at 11 (Tenn. Crim. App., Jackson, June 2, 1997). Furthermore, an extensive criminal record has been demonstrated in support of the trial court's finding under section 40-35-115(b)(2). See Jason Morin, slip op. at 11; see also State v. Jason L. Broadnax, No. 01C01-9702-CC-00044, slip op. at 4 (Tenn. Crim. App., Nashville, Jan. 16, 1998). The defendant has failed to overcome the presumption of the correctness of the trial court's finding as to these two bases for consecutive sentencing.

As to the third ground, that the defendant is a dangerous offender, Tenn. Code Ann. § 40-35-115(b)(4)(1997), we agree with the defendant that the trial court did not announce all of the findings that were required by our supreme court in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). In Wilkerson, the supreme court held that the imposition of consecutive sentencing upon a defendant found to be a dangerous offender requires, "in addition to the application of general

4

principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." Wilkerson, 905 S.W.2d at 939. The trial court's omission in this regard notwithstanding, we find that the record affords cogent evidence that a lengthy sentence is necessary to protect the public from this defendant who, after spending much time in the custody of the Department of Youth Development, not only continued to reoffend, but who escalated his offending into more serious crimes. In this regard, we take note of escape and aggravated assault charges that were pending against the defendant at the time of his sentencing in the present case. The proof showed that the defendant, armed with a gun, escaped from the custody of the Department of Youth Development and assaulted an officer in the process. Although this conduct may not be part of a record of criminal activity under section 40-35-115(b)(2), it is probative on the question of whether the public should be protected from this defendant under section 40-35-115(b)(4) and Wilkerson. Finally, we conclude that the record supports a conclusion that the period of confinement is reasonably related to the severity of the crimes committed. The severity of the defendant's crimes in this case speaks for itself.

We agonize over the plight of this young man. His father was imprisoned when the defendant was ten years of age, and the defendant dropped out of school in the sixth grade. Many of his few years have been spent in custody. Yet, no one has successfully intervened to stem his criminal behavior, and with the substantial sentence imposed him, the defendant has tragically brought his life to the brink of ruin. Nevertheless, our role as an appellate court is limited. If the record reflects that the trial court properly considered all relevant factors and its findings are adequately supported by the record, as they are in this present case, we must defer to the judgment of the trial court. Fletcher, 805 S.W.2d at 789.

For the reasons explained above, we affirm the judgment of the trial

court.

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
JOE B.  JONES, PRESIDING JUDGE


_____
PAUL G. SUMMERS, JUDGE