IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION

FILED

August 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,   *   C.C.A. # 02C01-9801-CR-00004

      Appellee,   *   SHELBY COUNTY

VS.   *   Hon. Chris Craft, Judge

NGUYON BAO,   *   (Two Counts of Attempted First Degree
                                    Murder and One Count of Attempted
      Appellant.   *   Second Degree Murder)

For Appellant:

Gerald Stanley Green, Attorney
147 Jefferson Avenue, Suite 404
Memphis, TN 38103
(on appeal)

W. Gary Ball, Attorney
242 Poplar Avenue
Memphis, TN 38103
(at trial)

For Appellee:

Paul G. Summers
Attorney General and Reporter

Michael E. Moore
Solicitor General

J. Ross Dyer
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243

Amy P. Weirich and
Daniel S. Byer
Assistant District Attorneys General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

OPINION

The defendant, Nguyon Bao, was convicted on two counts of attempted first degree murder and one count of attempted second degree murder. The trial court imposed consecutive Range I sentences of twenty years and fifteen years respectively on the convictions for attempted first degree murder and a concurrent ten-year sentence for the attempted second degree murder count. The effective sentence is, therefore, thirty-five years. In this appeal of right, the issues presented for review are as follows:

> (1) whether the trial court erred by allowing the state to file a notice of its intention to use impeachment testimony after the trial had begun;
>
> (2) whether the defendant was deprived of his right to confrontation of a witness; and
>
> (3) whether the trial court erred by imposing consecutive sentences on the attempted first degree murder convictions.

We affirm the judgment of the trial court.

At 3:00 A.M. on April 22, 1995, Khanh Lam, originally from Vietnam, arrived from work at a two-bedroom apartment he shared with Linh Nguyen, a co-worker he identified as Si, and a friend, Thien Nguyen. After showering and eating, Lam went to sleep in a room he shared with Thien. Lam, who was awakened by the sound of breaking glass, saw four men, two of whom he recognized, standing in his bedroom. He knew one of the individuals only as Duc. The other was the defendant. At trial, Lam testified that he saw the defendant punching or stabbing at Thien with a shiny object. Lam estimated that the defendant stabbed Thien, who was bleeding profusely, about six times. Lam testified that he tried to help but was pulled to the ground; when he tried to rise, the four individuals ran from the apartment.

2

Lam called police and Thien was taken to the hospital. After making a statement at the police station, Lam returned to his apartment and discovered that he had also been cut by what appeared to be a knife held by the defendant. Lam described Thien's primary injuries to the arm. As he and Linh treated Thien, however, they also discovered wounds to his legs, stomach, and his chest. Thien was hospitalized for four weeks.

Sergeant J.W. Bouchillon investigated the assault that occurred at the Lam apartment. He arrived at approximately 5:00 A.M. and confirmed that the witnesses at the scene had identified the defendant.

After the incident, Lam moved into the residence of his fiancé, Kimberly McPherson, who lived with her mother. Thien Nguyen moved into the same residence after his release from the hospital. On June 7, 1995, Ms. McPherson was driving Lam's Toyota Supra in the company of Thien Nguyen, who was on his way to receive physical therapy. During the trip, Ms. McPherson drove past the defendant, who was in his truck. Afterward, Ms. McPherson looked into her rear view mirror and observed the defendant shooting a gun in the direction of her vehicle. Three individuals who were in the back of the truck were also shooting in their direction. Ms. McPherson recognized Duc Nguyen, who was a passenger inside the defendant's truck, the same individual who had participated in the first attack on Thien Nguyen. Ms. McPherson fled in her vehicle. "I pushed my turbo button and floored it." The Toyota was scratched by the gunfire. Ms. McPherson drove downtown, got out of her car, and ran to the courthouse building to seek assistance from the police. Ms. McPherson later called the police after seeing the defendant's truck parked outside a local pool hall.

3

Officer Richard Pollard of the Memphis Police Department investigated this second incident. In response to Ms. McPherson's call, he drove to the pool hall and arrested Hien Tran, who Ms. McPherson identified as a passenger in the defendant's truck. The officer impounded the truck, which he learned was stolen, and conducted an inventory. A .22 caliber weapon was found behind the driver's seat of the defendant's truck. No tests were made on the weapon found in the vehicle. In July of 1995, Officer Brian Dehaan apprehended the defendant hiding in a garage at 120 North Claybrook in Memphis.

The defendant did not testify and offered no witnesses on his behalf.

I

Initially, the defendant complains that the state did not provide timely notice of its intention to use impeachment testimony. After presenting Lam as its first witness, the state announced that it had just learned that the defendant had been arrested some five months earlier on an aggravated assault charge. After his arrest, the defendant informed officers that his name was Long Thanh Tong. Trial counsel in this case, Gary Ball, represented the defendant in general sessions court on the earlier charge. The state explained that it had not learned of the prior incident until the date of trial because the defendant had supplied false identification. After a brief argument outside the presence of the jury, the trial court ruled that the state could use the impeachment evidence.

In pertinent part, Rule 608(b)(3) provides that "[i]f the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative value on credibility

4

outweighs its unfair prejudicial effect on the substantive issues." Tenn. R. Evid. 608(b)(3). "[T]here may be instances where the prosecution would not discover the accused's bad acts until after the trial begins, making pretrial notice impossible; in such cases immediate notice and a hearing on the issue before the accused testifies should satisfy the spirit of the rule." Advisory Commission Comments, Tenn. R. Evid. 608.

In this instance, the state was able to establish that the defendant would not be prejudiced because his trial counsel was fully aware of the arrest on the aggravated assault charge. It appears that the defendant's use of a false identification was the very reason the state did not discover the charge until after the trial began. Moreover, the defendant was unable to show that he had been prejudiced by the belated notice. While the defendant chose to exercise his right not to testify on the record and through an interpreter out of the presence of the jury, he made no mention of the trial court's prior ruling on the impeaching evidence as a reason for his decision not to testify.

II

Next the defendant claims that he was deprived of his right of confrontation because a victim, Thien Nguyen, was not present at trial. The defendant has not, however, cited any authority for his claim.

Initially, the issue has been waived for the failure of the defendant to cite authority. Tenn. R. App. P. 27; R. Tenn. Ct. Crim. App. 10; State v. Aucoin, 756 S.W.2d 705 (Tenn. Crim. App. 1988). Moreover, the claim is without merit. Certainly, the defendant would have been entitled to confront Thien Nguyen had he been utilized by the state as a witness. The Sixth Amendment to the United States

5

Constitution does not, however, apply in these circumstances. The fact that the state did not call Thien as a witness does not violate the right to confrontation. State ex rel. Byrd v. Bomar, 381 S.W.2d 280, 281-82 (Tenn. 1964).

III

Finally, the defendant claims that consecutive sentences should not have been imposed. It is the defendant's duty, however, to prepare an adequate record on appeal. Tenn. R. App. P. 24(b). A transcript of the sentencing hearing was not made a part of this record. In the absence of a sufficient record, this court must presume that the judgment of the trial court was supported by the evidence. Smith v. State, 584 S.W.2d 811 (Tenn. Crim. App. 1979).

Had the issue been preserved, well-established principles would apply. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed
> . . . and . . . the aggregate maximum of consecutive
> terms must be reasonably related to the severity of the
> offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or

6

more of the following criteria[1] exist:

> (1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

> (2)  The defendant is an offender whose record of criminal activity is extensive;

> (3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

> (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

> (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

> (6)  The defendant is sentenced for an offense committed while on probation;

> (7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).


In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present:  (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means

---

[1] The first four criteria are found in Gray.  A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion.  See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules."  Wilkerson, 905 S.W.2d at 938.

The state asserts that the defendant qualified as a dangerous offender who indicated little regard for human life and unhesitatingly committed crimes involving risk to human life.  Tenn. Code Ann. § 40-35-115(b)(4).  The record at the trial supports that conclusion.  By the use of the applicable standards, it would appear from the information available that consecutive sentences on two of the three convictions was entirely appropriate.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Joseph M. Tipton, Judge


_____
Thomas T. Woodall, Judge