IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2008

**STATE OF TENNESSEE v. KENNETH FORD**

**Direct Appeal from the Circuit Court for Madison County**
**No. 06-563    Donald H. Allen, Judge**

**No. W2007-02149-CCA-R3-CD  - Filed April 17, 2009**

The appellant, Kenneth Ford, was convicted by a jury in the Madison County Circuit Court of three counts of aggravated assault and one count of reckless endangerment. Following the verdict, the trial court sentenced the appellant to a total effective sentence of twenty-two years in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's imposition of consecutive sentencing. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Kenneth Ford.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On October 30, 2006, a Madison County Grand Jury returned a multi-count indictment charging the appellant on count one with the attempted first degree murder of Carolyn Hopson;[1] on count two with the aggravated assault of Hopson; on count three with the aggravated assault of

---

[1] The record also refers to the victims as follows: "Caroline," "Berniece," and "Brianna." However, we will use the names utilized in the indictments.

Hopson's oldest daughter, Brittany Butler; on count four with the aggravated assault of Hopson's youngest daughter, Brionna Butler; on count five with the aggravated assault of Hopson's middle daughter, Bernice Butler; and on count six with the harassment of Betty McNulty.

At trial, Hopson testified that in January 2006, she moved to Jackson from Chicago, Illinois. Hopson dated the appellant while living in Chicago, and when she moved to Jackson they lived together in Brookefield Apartments. Hopson's three daughters also lived with Hopson and the appellant.

Hopson said that on the evening of May 2, 2006, she was getting ready to go to work at a Circle K convenience store, but she could not leave until the appellant returned home with her vehicle. At approximately 10:30 p.m., the appellant came home drunk, stumbling and slurring his words. Hopson told the appellant that she did not want him driving her vehicle when he was drinking. She asked him for the keys to the vehicle, but he would not give them to her. They argued, and Hopson told the appellant to leave. The appellant walked through the kitchen and went out the back door.

The appellant came back in, and Hopson continued talking, telling the appellant that he had to get his "stuff" and leave. As she started to walk away, the appellant grabbed the back of her head, pulled her hair, and dragged her to the ground. An altercation ensued, and the appellant hit Hopson. The appellant then pulled out a steak knife that he had retrieved from the kitchen. The appellant repeatedly jabbed the knife at Hopson and cut her "about" six times, wounding the side of her chest, her face, her ear, and her hand. The appellant threatened to kill Hopson if she made him leave the house. Hopson stated that she feared the appellant would kill her and that her children would witness her death.

Hopson recalled that her three daughters and their friend were in the house. During the altercation, Hopson's children came to investigate the fight. Hopson's oldest daughter, Brittany,[2] came downstairs during the fight and attempted to pull the appellant off of Hopson. In response, the appellant turned around and "swung . . . at her with the hand the knife was in." Brittany stepped back and avoided being cut by the knife.

When asked how the attack on her daughter made her feel, Hopson said, "Oh, I was enraged. I was very angry and I don't know. I just – really just – I grabbed him and pulled him to the floor and we was fighting more." Bernice and Brionna came downstairs, and Hopson told Bernice to call the police. The appellant took the telephone away from Bernice, and she ran to a neighbor's house.

Hopson recalled that at one point during the altercation, the appellant swung the knife at Hopson but cut Brionna's arm. During the fight, Brittany threw a thick, glass ashtray at the appellant. Hopson believed that the ashtray may have dazed the appellant because he ran out the

---

[2] Some of the witnesses in this case share a surname. Therefore, for clarity, we have chosen to utilize their first names. We mean no disrespect to these individuals.

door.

The police were called and came to the residence. Hopson assured police that she would go to the hospital for her injuries; however, she treated and bandaged her own wounds. Hopson said that her injuries were "just basically cuts" and were not serious. Later that night, Hopson went to work at the Circle K market.

Hopson stated that Betty McNulty was the store manager of the Circle K market. After the altercation, the appellant called the store frequently and threatened Hopson. Once, McNulty answered the telephone and told the appellant to stop calling. The appellant then threatened McNulty.

Brittany Butler testified that she was thirteen years old at the time of trial. Brittany recalled that in May 2006, she was upstairs with her sisters when she heard her mother tell the appellant to give her the keys to her vehicle so she could go to work. Brittany heard Hopson scream, so she went downstairs. Hopson was holding the appellant's hand to prevent him from stabbing her with a knife he had in his hand. Brittany believed that the appellant was drunk. She tried to hit the appellant and pull him off of Hopson, but the appellant swung at her with the knife. Brittany recalled that she threw a speaker and a beer bottle at the appellant. Brittany said that she and her two sisters attempted to get the appellant off of Hopson. Brittany said that she was afraid for herself and her mother.

Brionna Butler testified that she was nine years old at the time of trial. On May 2, 2006, she was upstairs with her two sisters and their friend when she heard Hopson scream. Brionna went downstairs and saw the appellant, who was drunk and had a knife, holding Hopson in a corner near a door. The appellant was trying to stab Hopson with the knife, and Brionna hit the appellant with a beer bottle. At some point during the fracas, the appellant cut Brionna's arm with the knife. Brionna said that she was afraid for herself and for Hopson.

Bernice Butler testified that she was twelve years old at the time of trial. On May 2, 2006, she was upstairs with her two sisters and their friend when she heard a commotion downstairs. She went downstairs to investigate and saw the appellant with a knife, holding Hopson. Hopson told the girls to help her, so Bernice "grabbed stuff and threw it" at the appellant. Bernice said she could not find the telephone, so she went outside to look for a telephone to call police. She was unable to find help; however, Hopson found a telephone in a cabinet under the sink. Bernice explained that when she was upstairs, the appellant had taken another telephone out of her hand. A week later, Hopson and her daughters found the telephone under the couch. Bernice said that she was scared for herself and for Hopson during the altercation. She threw an ashtray and a metal bowl at the appellant, striking his back.

Investigator Danielle Jones testified that she took pictures of Hopson's injuries, including marks on her face, upper lip, lower chin, arm, side, and breast area.

Betty McNulty testified that Hopson was a cashier at the Circle K market. In May and June 2006, Hopson received several telephone calls. McNulty said she did not know the appellant, but the caller sounded like a black male and he repeatedly asked for Hopson. McNulty told the caller not to call the store again; however, he continued to call and threaten McNulty. McNulty said the threats scared her.

At the conclusion of the trial, the jury found the appellant guilty on count one of the aggravated assault of Hopson, on count two of the aggravated assault of Brittany, on count three of the aggravated assault of Brionna, and on count five of the reckless endangerment of Bernice. The jury found the appellant not guilty on count six of the harassment of McNulty. The jury could not reach a verdict on the attempted first degree murder charge, and the State chose to dismiss that count.

At the sentencing hearing, the appellant testified that he was forty-three years old and had moved to Jackson from Chicago. He said that he began working when he was fourteen or fifteen years old. He stated that he had worked at McDonald's for twenty years and had also worked at Western State Mental Hospital in Bolivar. The appellant acknowledged that he had felony convictions "years ago" in Illinois and that he was placed on probation after serving two years. He conceded that in March 2006, he was convicted of the domestic assault of Hopson and was on probation for that offense at the time he committed the instant offenses. The appellant said that at the time of the offenses, he had a "heavy drinking problem."

The trial court found that the appellant was a Range III persistent offender. The court also found that the appellant had other convictions in addition to the convictions necessary to establish the range, and applied enhancement factor (1). The trial court found no mitigating factors. Therefore, the trial court sentenced the appellant to eleven years for each aggravated assault conviction and to five years for the reckless endangerment conviction.

The trial court stated that "this was a pretty severe knife attack." The court also noted that the appellant was on probation for the domestic assault of Hopson at the time of the instant offenses. Therefore, the court ordered that the sentences on counts three, four, and five were to be served concurrently with each other but consecutive to count two for a total effective sentence of twenty-two years. On appeal, the appellant contends that the trial court erred in imposing consecutive sentencing.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

and (7) any statement by the appellant in his own behalf. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Initially, we note that "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) (2006) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). The trial court may impose consecutive sentencing upon finding the existence of any one of the following criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation; or
>
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7) (2006).

In the instant case, the trial court found two criteria for imposing consecutive sentencing. Specifically, the trial court found that the appellant was an offender whose record of criminal activity is extensive and that the offenses were committed while on probation. See Tenn. Code Ann. § 40-35-115(2) and (4). The record reflects that the appellant's criminal history consists of multiple felony and misdemeanor convictions, warranting the trial court's finding that the appellant's criminal history is extensive. Additionally, there is proof in the record that the appellant was on probation for the domestic assault of Hopson when the instant offenses were committed.

On appeal, the appellant argues that the trial court should not have imposed consecutive sentencing based upon his extensive criminal history because the bulk of his criminal history was amassed in the 1980s. The appellant argues that his "criminal record was relatively minimal . . . from 1990-2006, which argues against a finding of extensive criminal history."

The appellant's presentence report reflects that in 1982, the appellant was convicted of aggravated assault. In 1985 and 1989, he was convicted of theft of property between $1000 and $10,000, and in 1986, he was convicted of two counts of forgery up to $1000. The foregoing convictions occurred in Illinois. In 2006, after the appellant moved to Tennessee, he committed several traffic offenses.

The trial court, despite the age of most of the felony convictions, determined that the appellant's extensive criminal history warranted the imposition of consecutive sentencing. This court has previously stated that even remote convictions may be used in determining that an offender has an extensive criminal history for the purpose of consecutive sentencing. State v. Michael W. Cooper, No. M2001-00440-CCA-R3-CD, 2002 WL 360222, at *3 (Tenn. Crim. App. at Nashville, Mar. 6, 2002). Moreover, the appellant does not dispute that he was on probation at the time of the instant offenses, another valid basis on which to base an imposition of consecutive sentencing. Therefore, the trial court did not err in sentencing the appellant to an effective sentence of twenty-two years.

### III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE