# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 30, 2010 at Knoxville

## STATE OF TENNESSEE  v. QUINCY BRYAN BANKS

**Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1079      Seth Norman, Judge**

---

**No. M2009-00421-CCA-R3-CD - Filed April 14, 2010**

---

The defendant, Quincy Bryan Banks, appeals the consecutive-sentencing decision of the Davidson County Criminal Court, which was imposed following remand from the Court of Criminal Appeals for resentencing. *See State v. Quincy Bryan Banks*, No. M2007-00545-CCA-R3-CD (Tenn. Crim. App., Nashville, Apr. 11, 2008). Upon our de novo review of the order of consecutive sentencing without a presumption of correctness, we vacate the judgments of the trial court and remand for further sentencing proceedings.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Vacated; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

David Hopkins, Nashville, Tennessee, for the appellant, Quincy Bryan Banks.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The evidence underlying the defendant's convictions and the results of those convictions were summarized by this court in the first appeal:

> The [defendant], Quincy Bryan Banks, was convicted by a Davidson County jury of two counts of aggravated rape and one count of especially aggravated kidnapping. For these Class A felony convictions, Banks received concurrent twenty-three-year sentences for each

aggravated rape conviction, to be served consecutively to a twenty-three-year sentence for especially aggravated kidnapping. . . . After review, we conclude that Banks' challenges to his convictions are without merit. Accordingly, the convictions are affirmed. With regard to sentencing, however, we conclude that because Banks was sentenced under provisions of the June 7, 2005 sentencing amendments for crimes committed in November 2004, without a waiver of his ex post facto protections as required by statute, remand for a new sentencing hearing is required. Furthermore, because the sentencing record fails to demonstrate the requisite considerations for the imposition of consecutive sentencing, the case is also remanded for reconsideration of that issue and for entry of corrected judgment forms in accordance with this opinion.

. . . .

In November 2004, the victim, Kathleen Baker, was employed as a "roving manager" with The Mattress Firm, a retail establishment with stores in the Nashville area. As roving manager, Ms. Baker would substitute for store employees at different stores on different days. On November 29, Ms. Baker was assigned to the store in Belle Meade. At approximately 6:00 p.m. that evening, the [defendant] entered the store. Ms. Baker was alone in the office area of the store, speaking on the telephone with Connie Rademacher, an employee at another store location. Ms. Baker informed Rademacher that she "didn't have good feelings about [the defendant]," and Rademacher suggested that she maintain an open connection by laying the phone down without hanging up, which Ms. Baker did. Ms. Baker then greeted the [defendant], who informed her that he needed to purchase a mattress for his nephew. The two proceeded to the "value area" of the store, and Ms. Baker showed him some twin-sized mattresses. She returned to the office area to check the price on a floor model mattress, and the [defendant] followed. At this point, the [defendant] grabbed Ms. Baker from behind and held a knife to her throat, telling her he would kill her if she did not comply with his demands.

-2-

The [defendant] then proceeded to throw Ms. Baker to the floor and ordered her to remove her pants. The victim tried to stall the [defendant] and began speaking loudly, hoping that Rademacher would hear her through the open phone connection and summon help. Upon realizing that they were visible from the street because of the large glass windows, the [defendant] questioned the victim about rooms in the back of the store. Upon seeing the open door to a small storage area, the [defendant] again held the knife to Ms. Baker's back and forced her into the room at the rear of the store. Once inside the room, the [defendant] pulled down his pants, grabbed the victim, and forced her to perform oral sex on him. Afterwards, he forced her to lie down on the floor and removed her pants, again threatening to kill her if she resisted. The [defendant] then proceeded to rape the victim both vaginally and anally. During this time, the knife either remained in the [defendant's] hand or was placed on the floor nearby.

Rademacher, becoming concerned after hearing Ms. Baker say, "Give me back my glasses" and "I will go with you," called her district manager, who called 911. Officer Robert Peterson responded to the scene to investigate a possible robbery. Upon entering the building, he noticed a pair of red shoes and a pair of eyeglasses on the floor in the office area, but he did not see anyone in the store. He proceeded to the rear of the store, where he heard a "commotion" and some movement. Peterson knocked on the door and heard a female ask for help, followed by a male voice saying that nothing was going on and to go away. Peterson then pushed open the door and observed the [defendant] with no shirt on and his jeans partially unzipped and hanging from his hips. Ms. Baker was positioned on the floor wearing a red jacket and nothing else. Peterson drew his weapon and ordered the [defendant] to kneel on the floor. Peterson observed a knife located directly in front of the [defendant] when he knelt. The [defendant] was then handcuffed and taken into custody.

Sergeant Twana Chick responded to the scene and spoke with Ms. Baker, whom she described as "hysterical, extremely, extremely upset, just hardly able to answer

questions." The victim was taken to Nashville General Hospital, where a rape kit examination was conducted. The examination revealed red marks or scratches on the victim's neck, back, arm, and thigh, as well as two small bruises on her abdomen. Moreover, stool was found in her vagina, which was consistent with her report of anal rape followed by vaginal rape, and blood was found in her rectum. Samples were collected and sent for DNA analysis.

The [defendant's] fingerprint was found on the knife, and DNA testing of an anal swab and Ms. Baker's pantyhose matched the DNA of the [defendant]. Several weeks later, Ms. Baker discovered she was HIV-positive, and testing revealed that the [defendant], who had not worn a condom during the rapes, was also HIV-positive.

Following a November 2006 jury trial, the [defendant] was convicted of four counts of aggravated rape and one count of especially aggravated kidnapping. . . . The court also merged the alternative aggravated rape convictions, resulting in two convictions for aggravated rape. A sentencing hearing was held on January 10, 2007, after which the trial court sentenced the [defendant] to twenty-three years for each of the three Class A felony convictions. The court further ordered that the two sentences for aggravated rape be served concurrently, but consecutively to the sentence for especially aggravated kidnapping, resulting in an effective sentence of forty-six years as a violent offender. Following the denial of his motion for new trial, the [defendant] filed the instant timely appeal.

*Quincy Bryan Banks*, slip op. at 1-3.

In *Quincy Bryan Banks*, this court summarized the sentencing proceeding as follows:

The three crimes for which the [defendant] was convicted all occurred on November 29, 2004, well before the 2005 amendments to our sentencing act. However, the [defendant] was not sentenced until January 10, 2007. Thus, the [defendant] could have elected to be sentenced either under the

pre-2005 sentencing law or the post-amendment law.

No waiver of the [defendant's] ex post facto protections is contained in the record. Thus, the [defendant's] sentences would be governed by the pre-2005 law. . . . [I]t is evident that the [defendant] was sentenced under the provisions of both the pre-2005 amended act and the post-amendment law, the latter occurring without an ex post facto waiver.

Accordingly, we remand for sentencing under the pre-2005 sentencing provisions, which were in effect at the time of the crimes, as modified by [*State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007)], or, upon written waiver of ex post facto protections, the [defendant] may elect to be sentenced under the post-amendment sentencing law as permitted by the statute. At the re-sentencing hearing, neither the State nor the [defendant] is confined to the proof at the prior hearing and may introduce additional proof as relevant to the hearing and as authorized by the applicable sentencing law.

. . . .

. . . The [defendant] challenges the application of three enhancement factors: factor (1) that the [defendant] has a previous history of criminal convictions or criminal behavior; factor (5) that the [defendant] treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense; and factor (21) that the [defendant] knew or should have known that, at the time of the offense, he was HIV-positive.

. . . [I]n applying factor (1) [under the pre-2005 sentencing law] the court will be allowed to consider only the [defendant's] prior conviction for misdemeanor theft, or any other prior conviction established, but not the three pending charges for aggravated robbery, proof of which was admitted at the sentencing hearing. In order to consider these pending charges, the sentencing court would be required to make a factual finding that the [defendant] had, in fact, committed these offenses, which would violate the holding of *Blakely*.

-5-

If the [defendant] elects to proceed under the post-amendment law, with regard to factor (1), the court may consider the [defendant's] prior conviction for misdemeanor theft, or any other conviction established, as well as the three pending charges for aggravated robbery because, at the [defendant's] sentencing hearing, a detective testified regarding the robberies and the [defendant's] confessions, as well as introducing surveillance photographs. Our supreme court has held that prior criminal acts for which there has been no conviction may constitute "criminal behavior" within the meaning of the statute. . . .

With regard to factor (5), the [defendant] contends, and the State concedes, that the record fails to establish that the victim was treated with exceptional cruelty during the commission of the offense. We agree. Review of the record reveals that the trial court made no finding that the [defendant] knew, or should have known, that he was HIV-positive when he committed the rapes of the victim. As such, we are unable to review application of this factor. Upon remand, the court should make such determination and apply the factor based upon its finding. . . .

    . . . .

The [defendant] also contends that the trial court erred in ordering that his sentence for especially [aggravated] kidnapping be served consecutively, resulting in an effective sentence of forty-six years. He asserts that the court failed to articulate its reasoning for the imposition of consecutive sentencing as required by law and that the record fails to justify the sentence.

In imposing partial consecutive sentencing in this case, the trial court relied upon the finding that the [defendant] was a dangerous offender [because he "did, in fact, cause great bodily harm to the person in this particular case. Yeah, factor number four, that he did, in fact, infect the victim with HIV during the performance of this act"].

Contrary to the [defendant's] assertion, the trial

-6-

court found that the [defendant] was a dangerous offender, relying upon subsection (4) to impose partial consecutive sentences. *See* T.C.A. § 40-35-115(4) (2003). However, as our supreme court decisions have held, this sole finding does not end the inquiry as to whether consecutive sentences may be imposed. Case law clearly holds that in addition to finding that a defendant meets one of the statutory classifications of Tennessee Code Annotated section 40-25-115 for consecutive sentencing, the court must find that "(1) the [aggregate] sentences are necessary in order to protect the public from further misconduct by the defendant; and (2) 'the [aggregate sentence] terms are reasonably related to the severity of the offenses.'" The record in the present case is devoid of either of these considerations. Accordingly, in view of the necessity for remand for determination of the proper length of sentences, we likewise remand for determination of the propriety of consecutive sentencing.

*Id.*, slip op. at 8-11 (citations and footnotes omitted).

As noted, the defendant did not execute an *ex post facto* waiver on remand and was sentenced pursuant to the pre-2005 sentencing law which, according to *Gomez* and the Sixth Amendment to the United States Constitution, did not authorize a trial court to lengthen a defendant's sentence beyond the presumptive minimum based upon the trial court's finding of enhancement facts, except for the fact of prior criminal convictions. In view of applicable constitutional restrictions, therefore, the trial court on remand abated each 23-year sentence to 20 years, a constitutionally compliant action that required no fact finding. The court, however, retained the partially consecutive sentencing alignment without making the factual findings ordered by this court in *Quincy Bryan Banks*. As noted in *Quincy Bryan Banks*, the trial court statutorily based its consecutive sentencing upon the "dangerous offender" category set forth in Tennessee Code Annotated section 40-35-115(b)(4) (2003).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the trial court's determinations are correct. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Id.* The burden of showing sentence impropriety is on the defendant on appeal. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review reflects that the trial

court properly considered all relevant factors and if its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

To support the consecutive sentencing of a "dangerous offender," *see* T.C.A. § 40-35-115(b)(4), "[t]he proof must . . . establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). The commission of crimes which are "inherently dangerous" does not by that fact alone justify consecutive sentences because there are "increased penalties" for such crimes. *See Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976); *Wilkerson*, 905 S.W.2d at 938.

In this appeal, our review of the consecutive sentencing is de novo. This court previously determined that the trial court did not make the findings to support a "dangerous offender" basis for consecutive sentencing, and clearly no further findings in that regard were made upon remand.

We have considered the State's bid to have us affirm the consecutive alignment based upon our review of the record, despite the trial court's lack of findings. We cannot do so in the present case because the record before us now adds nothing more than what was before the court in the first appeal that resulted in the remand.

We surmise from this court's opinion in *Quincy Bryan Banks* that, at the time of the defendant's original sentencing in this case, multiple cases of aggravated robbery were pending against him and that the possibility of a series of offenses was of concern to the court in imposing consecutive sentencing. As we pointed out, however, constitutional restrictions upon the pre-2005 sentencing law allowed judge-enhancement of sentences only when other criminal conduct had resulted in a conviction (unless the factual basis for such were admitted by the accused), and apparently at the time of the original sentencing the charges of aggravated robbery had not resulted in convictions. Although the constitutional restrictions upon the trial court's setting the length of the defendant's sentence under the pre-2005 sentencing law do not apply to the determinations of consecutive sentence alignment, *see State v. Allen*, 259 S.W.3d 671, 688 (Tenn. 2008), the trial court on remand in this case did not make any findings that the defendant committed the aggravated robberies; neither did it find that the charges had resulted in convictions.

We also infer that the trial court, in characterizing the defendant as dangerous, may have originally been concerned about the defendant's knowing infection of the victim

with the HIV virus. This court, however, pointed out that the trial court did not make a finding that the defendant knew about his HIV infection at the time the offenses were committed against the victim.

All in all, with respect to the issue of consecutive sentencing, we remain in the same procedural posture we were in at the time of remand. Given the imperative to make the 23-year sentences constitutionally compliant, we believe the trial court overlooked the order to make the appropriate findings relative to consecutive sentencing. Accordingly, we vacate the portion of the amended judgments that calls for consecutive sentence alignment, and we remand the case for the trial court to conduct such further sentencing hearings as either party may request and to make its findings in conformity with applicable law.

_____
JAMES CURWOOD WITT, JR., JUDGE