# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 1, 2006

## STATE OF TENNESSEE v. BRANDON WALLACE

**Appeal from the Circuit Court for Lauderdale County**
**No. 7346-D     Joseph H. Walker, Judge**

---

**No. W2005-02514-CCA-R3-CD  - Filed November 7, 2006**

---

The Appellant, Brandon Wallace, appeals the sentencing decision of the Lauderdale County Circuit Court.  Following a jury trial, Wallace was convicted of two counts of attempted first degree murder, attempted second degree murder, attempted especially aggravated robbery, especially aggravated burglary, and felony reckless endangerment.  Wallace's conviction for attempted especially aggravated robbery was merged with his conviction for especially aggravated burglary.  Following a direct appeal of his convictions and sentences, a panel of this court affirmed the convictions but remanded for resentencing in accordance with *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2005).  After a resentencing hearing was conducted, Wallace was sentenced to twenty years for each attempted first degree murder conviction, eight years for attempted second degree murder, eight years for attempted especially aggravated robbery, eight years for especially aggravated burglary, and one year for felony reckless endangerment.  Based upon the imposition of partial consecutive sentencing, Wallace received an effective sentence of forty-years confinement.  On appeal, he challenges the trial court's application of enhancement factors, failure to apply mitigating factors, and imposition of consecutive sentencing.  After review, the sentences are affirmed.  However, we remand for entry of corrected judgment of conviction forms to properly reflect merger of the offenses and imposition of the aggregate forty-year sentence.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed; Remanded for Entry of Corrected Judgments of Conviction**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

William Dan Douglas, Jr., Ripley, Tennessee, for the Appellant, Brandon Wallace.

Paul G. Summers, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer-Walker, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

The relevant facts of the case, as established on direct appeal, are as follows:

> On July 1, 2002, the [Appellant] and two codefendants, Maurice Garrett and William Bumpus, forced their way into a mobile home in Lauderdale County, intending to rob the owner, Jerome Eisom, of drugs and money. A third codefendant, Tyrese Smith, waited in the driver's seat of the getaway car. A struggle ensued inside the home, and Eisom was shot four times while a visitor in the home, Bobby Harrell, was shot twice. Eisom's live-in girlfriend, Deborah Macklin, was chased by the [Appellant] out of the house, as well as chased and shot at by the driver of the car, but she was not hit. Candi Bynum, a seventeen-year-old cousin of Eisom, and four-year-old Jeremecia Eisom and nine-month-old Jerome Eisom, Jr., the children of Eisom and Macklin, were in the home at the time but were not injured. The [Appellant] and his codefendants fled the scene in the getaway car and three of them, including the [Appellant], were arrested near Brownsville a short time later.

> . . . .

> Jerome Eisom testified that when he had opened his front door, he saw a blue car sitting in the middle of the road and "two guys were like standing at the corner of the door." One pointed a gun at Eisom, who tried to grab it, but the gun fired and struck Eisom. Then, according to his testimony, "this tall guy comes over the top and shoots me in the shoulder, and so I let the gun go." He and the first man began wrestling down the hallway and ended up in the bedroom. Eisom described the second man who shot him as wearing an "orange bandana, and, you know, he was just gun-crazy, gun-happy and all that. He was just shooting and bouncing around and his little bandana flopping. And he had braids, long braids, and real tall." Eisom identified the [Appellant] in the courtroom as the second man who shot him. He also explained how the three assailants "worked together."

*State v. Brandon Wallace*, No. W2003-01967-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 28, 2005) (remanded for resentencing in accordance with *Blakely v. Washington*). On direct appeal, the Appellant challenged the sufficiency of the convicting evidence, as well as the trial court's sentencing decisions regarding the sentence lengths and imposition of consecutive sentences. *Id*.

On appeal, a panel of this court concluded that the evidence was sufficient to support each of the Appellant's convictions but found error in the application of enhancing factors under the holding of *Blakely v. Washington*. *Id*. Accordingly, the case was remanded for resentencing. *Id*. Notwithstanding remand, this court proceeded to conduct a *de novo* review of all remaining

sentencing issues and concurred with the trial court's rejection of mitigating factor (6),[1] as well as concluding that the record abundantly supported the trial court's findings with regard to consecutive sentencing. *Id.*

A second sentencing hearing was held on October 5, 2005, at which the victim Jerome Eisom, the Appellant, and the Appellant's mother testified. Moreover, the State and the Appellant agreed to stipulate to the presentence report which was submitted at the first hearing, as well as an updated victim impact statement. Although the presentence report is not included in the record before us, we glean from the record in the prior appeal, as well as from testimony offered at the second sentencing hearing, that the Appellant was released from the custody of the Department of Children's Services on his nineteenth birthday on June 14, 2002, and was arrested for the instant offenses on July 1, 2002. *Id.* As a juvenile, the Appellant was adjudicated a delinquent based upon his acts of aggravated assault and two counts of aggravated robbery. *Id.* Additionally, the Appellant has juvenile adjudications for two counts of unauthorized use of a vehicle, theft of property, vandalism, and escape.

Eisom testified as to the circumstances of the offenses, as well as the emotional impact the event has had on his family. He conceded that the events in question lasted only thirty to forty seconds. A victim impact statement from the victim Harrell was admitted, which described the continuing health problems he has endured as a result of the shooting. The Appellant's mother testified that the Appellant had expressed remorse for his actions.

The trial court observed that, following the remand in this case, the Tennessee Supreme Court released its decision in *State v. Gomez,* 163 S.W.3d 632 (Tenn. 2005), which held that the Tennessee Sentencing Reform Act did not violate the Sixth Amendment holding in *Blakely v. Washington*. At the remand hearing, the trial court applied the same two enhancement factors as applied at the initial hearing: (1) that the Appellant was a leader in the commission of an offense involving two or more criminal actors; and (2) that the Appellant was adjudicated to have committed delinquent acts as a juvenile which would constitute a felony if committed by an adult. *See* T.C.A. § 40-35-114(3), (21) (2003). Additionally, the court again found that no mitigating factors were applicable. Thus, after considering the appropriate factors, the trial court sentenced the Appellant to twenty years for each attempted first degree murder, eight years for attempted second degree murder, eight years for attempted especially aggravated robbery, eight years for especially aggravated burglary, and one year for reckless endangerment. The trial court merged the especially aggravated robbery conviction with the especially aggravated burglary conviction. Next, the trial court considered consecutive sentencing and again found that the Appellant had a record of criminal activity which was extensive and that the Appellant was a dangerous offender. As such, the court ordered that the two twenty-year sentences for attempted first degree murder be served consecutively and that the remaining sentences be served concurrently to each other, as well as concurrently with the two sentences for attempted first degree murder.

---

[1] Mitigating factor (6) permits mitigation of the sentence if the defendant, because of his youth, lacked substantial judgment in committing the offense. T.C.A. § 40-35-113(6) (2003).

At this juncture, we are constrained to note that the judgment of conviction forms state that the twenty-year sentence for attempted first degree murder (count one), the twenty-year sentence for attempted first degree murder (count two), and the eight-year sentence stemming from the merger of count four (attempted especially aggravated robbery) and count five (especially aggravated burglary) were ordered to run consecutively, resulting in an aggregate sentence of forty-eight years. However, the transcript of the sentencing hearing on remand reflects that the trial court ordered only that the two twenty-year sentences for attempted first degree murder be served consecutively. When there is a conflict between the judgment forms and the oral findings of the trial court, the oral findings control. *State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Furthermore, with regard to the merger of the Appellant's convictions for attempted especially aggravated robbery (count four) and especially aggravated burglary (count five), both Class B felonies, it is unclear from the judgment forms which single conviction and sentence survive for Department of Correction records and sentencing calculation purposes. Typically, under the merger concept, the lesser offense is not extinguished, but simply merged with the greater offense resulting in <u>one</u> judgment of conviction. Accordingly, remand is necessary for entry of corrected judgment of conviction forms to reflect an aggregate consecutive sentence of forty years and for entry of corrected judgment forms to reflect which single conviction, either count four or count five, remains for Department of Correction purposes.

## Analysis

On appeal, the Appellant challenges the sentences imposed by the trial court on remand, as well as the imposition of consecutive sentencing. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)). The party challenging a sentence bears the burden of establishing that the sentence is erroneous. T.C.A.§ 40-35-401(d), Sentencing Commission Comments.

If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different

result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness. *See Ashby*, 823 S.W.2d at 169.

The Appellant was convicted as a Range I, standard offender of two counts of attempted first degree murder, Class A felonies, which carry a sentencing range of fifteen to twenty-five years. T.C.A. § 40-35-112(a)(1) (2003). He was also convicted of attempted second degree murder, attempted especially aggravated robbery, and especially aggravated burglary, each Class B felonies, which carry a sentencing range of eight to twelve years. *Id*. at (a)(2). Finally, the Appellant was convicted of felony reckless endangerment, a Class E felony, which carries a sentencing range of one to two years. *Id*. at (a)(5). The presumptive sentence to be imposed by the trial court for a Class A felony is the midpoint of the range, while the presumptive sentence to be imposed by the trial court for a Class B or E felony is the minimum sentence within the applicable range absent the presence of enhancement or mitigating factors. T.C.A. § 40-35-210(c). If the trial court finds enhancement factors but no mitigating factors, the court may set the sentence above the presumptive minimum sentence. *Id*. at (d). However, if both enhancement and mitigating factors are present, the court must start at the minimum sentence, enhance as appropriate for enhancement factors, and then reduce the sentence as appropriate for applicable mitigating factors. *Id*. at (e).

On appeal, the Appellant first challenges the trial court's application of enhancement factors (3) and (21). With regard to factor (3), the Appellant argues that the proof at trial was conflicting with regard to the Appellant's participation and leadership role in the crimes. The State, on the other hand, argues that the only conflicting proof presented was the Appellant's own statement. From the brief testimony of Eisom at the sentencing hearing, as well as the record of the case on direct appeal, we are able to ascertain that the Appellant and a co-defendant approached the front door of the home and forced their way in. As the co-defendant and Eisom struggled, the Appellant shot Eisom. He subsequently chased Eisom's girlfriend out of the home and ordered the getaway driver to shoot her. The Appellant then returned to the home to shoot Harrell. We agree with the State that the only conflicting proof regarding the Appellant's leadership in the commission of the crimes is his statement that he was misled by the codefendants into committing the crimes. Clearly, the trial court rejected that testimony. Moreover, we note that this court on direct appeal did not find that the factor was not established, only that it violated *Blakely*. Thus, we conclude that there was no error in the trial court's application of enhancing factor (3).

The Appellant also contests the court's application of enhancement factor (21) based upon his prior juvenile adjudications of delinquency. Again, we find no error in the application of this factor. The record amply establishes that the Appellant had an extensive juvenile history. He acknowledged that he was adjudicated a delinquent for the act of aggravated assault after stabbing his victim in the head and face. Moreover, he acknowledged that he had been adjudicated a delinquent for two separate acts of aggravated robbery. Additionally, the Appellant had adjudications for two counts of unauthorized use of a vehicle, theft of property, vandalism, and escape. Accordingly, enhancement factor (21) is supported by the record.

Next, the Appellant asserts that the trial court failed to apply applicable mitigating factors in determining his sentence lengths. The Appellant argues that he should be sentenced to the minimum sentence within the range based upon the fact that all of the convictions involved one single continuous course of conduct which lasted only seconds, that the Appellant was only nineteen at the time of the crimes, and that these were his first adult criminal offenses. First, this argument is misplaced because the Appellant received the minimum sentence or presumptive minimum sentence for each conviction. Furthermore, we find no error in the trial court's refusal to apply mitigating factors in this case. As previously noted, the Appellant had an extensive record of juvenile delinquency and had been released from juvenile custody less than one month when these violent crimes by use of a firearm occurred.

Next, the Appellant challenges the trial court's imposition of consecutive sentencing. As noted, this court on direct appeal found no error in the trial court's decision to impose consecutive sentences based upon the Appellant's record of extensive criminal behavior and his classification as a dangerous offender. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is an offender whose record of criminal activity is extensive;" or that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" T.C.A. § 40-35-115(b)(2), (4) (2003). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. T.C.A. § 40-35-102(1), –103(2).

In *Gray*, our supreme court held that before consecutive sentencing could be imposed following classification of the defendant as a dangerous offender, considered the most subjective of the classifications and the most difficult to apply, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. *Gray v. State*, 538 S.W.2d 391, 393-94 (Tenn. 1976). In *State v. Wilkerson* and *State v. Imfeld*, our supreme court reaffirmed those principles, holding that before sentencing a defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes and necessary to protect the public against further criminal conduct. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). Proof that a defendant's behavior indicated no hesitation to commit a crime when the risk to life was high " is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences." *Wilkerson*, 905 S.W.2d at 938.

In its order imposing consecutive sentencing, the trial court observed:

This [Appellant] is an offender whose record of criminal activity is extensive, dating back for a number of years with the Juvenile Court system; and . . . this

[Appellant] is a dangerous offender whose behavior indicates little or no regard for human life and has no hesitation about committing a crime in which the risk to human life is high.

There is proof in the record that a consecutive sentence is needed, and that such a sentence would reasonably be related to the severity of the offenses committed; further, that consecutive sentences would serve to protect the public or society from further criminal acts by this [Appellant], who resorts to aggravated criminal conduct, and that a consecutive sentence would be congruent with the general principles of sentencing, that this [Appellant] is a dangerous offender.

The Court further finds that consecutive sentencing is appropriate in that it's necessary to protect the public from criminal conduct by the [Appellant].

These findings reflect the relevant considerations required for the imposition of consecutive sentences, and we find nothing in the record to preponderate against these findings. The nineteen-year-old Appellant had numerous prior adjudications of delinquent acts as a juvenile which clearly support the court's finding of an extensive criminal history. Moreover, the record also supports the finding that the Appellant is a dangerous offender. His armed invasion of an occupied home and the repeated firing of his weapon in an area where others, including small children, were present clearly demonstrates his lack of regard for human life and that he has no hesitation in committing a crime in which the risk to human life is high. This issue is without merit.

## CONCLUSION

Based upon the foregoing, the sentences imposed by the Lauderdale County Circuit Court are affirmed. The case is remanded for entry of corrected judgment of conviction forms consistent with the opinion.

_____
DAVID G. HAYES, JUDGE