IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 1, 2006 Session

### STATE OF TENNESSEE v. MARCHELLO SIMPSON

**Appeal from the Circuit Court for Hardeman County**
**No. 05-01-0072    J. Weber McCraw, Judge**

---

**No. W2005-02700-CCA-R3-CD  - Filed November 6, 2006**

---

The defendant, Marchello Simpson, pled guilty to aggravated assault, a Class C felony, and nolo contendere to aggravated burglary, a Class C felony.  The trial court sentenced the defendant as a Range I, standard offender to six years for each of the convictions and ordered that the sentences be served consecutively in the Department of Correction.  On appeal, the defendant claims that the trial court erred in ordering consecutive sentences based upon a finding that he was a dangerous offender. We hold that no error occurred, and we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P. J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Gary F. Antrican, District Public Defender, and David S. Stockton, Assistant Public Defender, (on appeal); and C. Michael Robbins, Memphis, Tennessee, (at trial), for the appellant, Marchello Simpson.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Joe VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was charged with attempted second degree murder, aggravated burglary, and aggravated assault.  He went to trial, but he entered into a plea agreement during the trial. The prosecutor's recitation of facts at the defendant's plea hearing was as follows:

> Had this matter gone to a conclusion of trial, the State would have
> introduced proof that on or about the 15th day of September of 2004,
> the defendant in this matter, Marchello Simpson, entered the home of
> Robert Lanier at 115 Stevens Road here in Hardeman County.  While

there, he took five weapons from the Lanier home and threatened the homeowner when he was caught there. The defendant fled the scene in his gray Nissan automobile, and in the process of fleeing, was encountered by various officers from the Hardeman County Sheriff's Department. In his attempt to flee, a chase ensued between the defendant in this matter and then deputy, Billy Davis, now Sergeant Davis of the Hardeman County Sheriff's Department. The chase with Sergeant Davis began on Burnett Mills Road, went up Fish Lane, through the side, back and other side yards of a residence on Fish Lane, proceeded back on Fish Lane to Burnett Mills Road, at which point, a right turn was made taking them on Burnett Mills toward Highway 125.

In the process of rounding a corner – excuse me – of trying to negotiate a turn, the defendant lost control of his vehicle, went through a field type area in front of a church, flipped his vehicle, crashing his car. At that point, he exited the vehicle in an attempt to continue to gain his liberty, pulled three weapons out of the trunk of the car, one of which he attempted to chamber a round in by pulling back the slide on a semi-automatic shotgun, triggering the apparatus that would, in turn, chamber a round, then pointed that gun at Deputy Billy Davis. At that point, Deputy Davis opened fire on the defendant. The defendant was injured in that and taken by EMS to Air Wing where he was transported to The Med in Memphis. All of this did occur here in Hardeman County.

Defense counsel noted an exception to the state's claim that the defendant "chambered a round" and stated that the plea was "based upon objectively determined [sic] Sergeant Davis could have reasonably and objectively been put in imminent fear of bodily harm" rather than any intent on the defendant's part to assault or kill anyone.

At the sentencing hearing, the state presented the testimony of the aggravated burglary victim, Robert Lanier, and of the aggravated assault victim, Billy Davis. Lanier testified that the defendant threatened to shoot him during the burglary, although he admitted that he was unable to tell whether an object the defendant had in his hand was a gun. Davis testified that after the defendant wrecked his car, the defendant got a gun from the trunk and "put it toward the hip in a manner as if he was chambering a round and then he pointed the gun in [Davis's] direction." Davis testified that he thought the defendant was going to shoot him and that he shot the defendant.

Lashauni Black testified that she and her two children lived with the defendant at the time of the offenses. She said that the defendant's mother and his sister and brothers lived locally.

-2-

The defendant testified that he did not go to Robert Lanier's house on September 15, 2004, did not steal guns from his house, and did not threaten to shoot Lanier. He testified that he did farm work for Doug Mayfield and that he and Mayfield also sold guns. He said he was on his way to Mayfield's farm when Mayfield called him and told him "to go drop off something," which the defendant said referred to guns. The defendant testified that Mayfield told him to go to a store to meet the person who was to buy guns. The defendant said that when he did so, the person he met was Lanier, whom he had never met before this date. The defendant testified that he became suspicious of Lanier and did not complete a transaction with Lanier. The defendant said that he never showed the guns to Lanier. When asked on cross-examination how Lanier could have furnished the serial numbers for the guns to an investigator on the morning of the crimes, the defendant had no explanation.

The defendant testified that after leaving the meeting with Lanier, a sheriff's deputy followed him. He said that as the deputy was following him, he passed a sheriff's vehicle on the side of the road, heard two shots, and fled. He said that a chase ensued and that he wrecked. The defendant said that Davis told him to put his hands up and asked him where the guns were. The defendant testified that he thought Davis was referring to the guns he had for sale. The defendant said that as he took one of the guns from his trunk and threw it on the ground, he was shot in the face. The defendant testified that he was not attempting to kill Davis and that he did not intend to threaten Davis or to cause Davis to fear harm. The defendant said that he had received significant injuries which required ongoing medical care.

The defendant testified that he understood that if he were given an alternative sentence, he would be required to follow the law, which would include getting out of the illegal gun business. He said that he was in the process of applying for disability at the time he was incarcerated but that he would attempt to find out whether he was able to work, and if so, he would get a job. The defendant admitted that he had a juvenile record for aggravated assault involving a weapon but said that he had not used a weapon in that offense.

After receiving the proof, the trial court acknowledged the relevant considerations, found enhancement factors regarding the defendant's possession of a firearm during the offenses, the defendant's lack of hesitation to commit the crimes when the risk to human life was high, and with respect to the aggravated burglary, the defendant's commission of the crime under circumstances in which the potential for bodily injury to the victim was great. The court noted the lack of mitigating factors. The court imposed six-year terms for each of the two convictions and denied alternative sentencing. The trial court also found that the defendant was an appropriate candidate for consecutive sentencing because he was a dangerous offender.

On appeal, the defendant claims that he should not have received consecutive sentences. Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are

adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant is a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). For dangerous offenders, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995); see State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). Rule 32(c)(1) of the Tennessee Rules of Criminal Procedure requires that the trial court "specifically recite the reasons" behind its imposition of a consecutive sentence. See State v. Donnie Thompson, No. M2002-01499-CCA-R3-CD, Maury County, slip op. at 5 (Tenn. Crim. App. Mar. 3, 2003) (reversing the trial court's imposition of consecutive sentencing because it failed to make a finding under Tennessee Code Annotated section 40-35-115(b) and the record did not support a conclusion that the defendant met the consecutive sentencing prerequisites).

In the present case, the court made the following observations on the record with respect to consecutive sentencing:

> [T]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. The Court also finds all three of the following factors which are applicable: that the circumstances surrounding the commission of the offense are aggravated, the confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life, and the defendant's resort to criminal activity in furtherance of his lifestyle and the aggregate length of the sentence reasonably relate[s] to the offenses to which the defendant stands convicted.

In making its findings, the trial court appears to have applied the holding in State v. Woods, rather than the more recent decision of the supreme court in State v. Wilkerson. Compare State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991) (delineating four-part test for classification of dangerous offenders), with Wilkerson, 905 S.W.2d at 937 (limiting holding of Woods and establishing that in addition to statutory criteria for dangerous offender classification found in T.C.A. § 40-35-115(b)(4), proof must show "that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender"). The issue on appeal, however, is whether we should modify the defendant's

sentences to reflect concurrent service based upon his claim that the trial court made inadequate factual findings to support the consecutive sentencing determination. We conclude that the trial court made sufficient findings supported by the record.

The evidence of record reflects that during the course of his crime spree, the defendant threatened to kill Robert Lanier, led law enforcement officers on a high-speed chase which also left the roadway and ventured into residential yards, and pointed a gun at Deputy Davis. Neither death threats nor use of a weapon were elements of either aggravated burglary or of the mode of aggravated assault of which the defendant was convicted, but he used these threatening means to accomplish his crimes. The record also reflects that the defendant supported himself, at least in part, through the illegal sale of firearms, and his testimony indicated that this enterprise was organized and ongoing. These facts amply demonstrate the defendant's lack of regard for life, both his own and that of others, his lack of hesitation to commit his crimes in the face of high risk to life, the severity of the offenses in relation to the length of the effective sentence, and the need to protect the public from the defendant. The evidence of record does not preponderate against the trial court's consecutive sentencing determination.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE