# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 6, 2012

## STATE OF TENNESSEE v. DAVID LEE LEGGS

**Appeal from the Criminal Court for Davidson County**
**No. 2010-D-3048     Cheryl Blackburn, Judge**

**No. M2012-00136-CCA-R3-CD - Filed December 7, 2012**

The defendant, David Lee Leggs, was convicted by a Davidson County Criminal Court jury of three counts of aggravated robbery, a Class B felony, and was sentenced by the trial court as a Range III, persistent offender to twenty-five years for each conviction, with one of the sentences ordered to be served consecutively to the other two concurrent sentences. Because the defendant had prior convictions for aggravated robbery, the sentences were also ordered to be served at 100 percent, pursuant to Tennessee Code Annotated section 40-35-501(k)(2), for a total effective sentence of fifty years at 100 percent in the Department of Correction. The sole issue the defendant raises on appeal is whether the trial court erred by ordering consecutive sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

James O. Martin, III (on appeal) and Brian T. Boyd (at trial), Nashville, Tennessee, for the appellant, David Lee Leggs.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant's convictions arose from his August 13, 2010 armed robbery of Jang Choi, Dae Choi, and Rosminda Escalante, who were, respectively, the owner, owner's son,

and employee of the Korea House, a Korean Restaurant located on Charlotte Pike in West Nashville.[1] According to the State's proof at trial, the three victims were carrying trash to the dumpsters behind the restaurant at approximately 11:00 p.m. when the defendant came from behind the dumpsters, pointed a handgun at them, ordered them to the ground, and demanded that they give him their possessions. After taking Jang Choi's wallet and cash, Dae Choi's wallet, cash, and cell phone, and Escalante's cell phone, the defendant demanded the rest of the money and began trying to force Jang Choi inside the restaurant with him. The defendant gave up the attempt and fled on foot when Jang Choi's wife peeked out of the restaurant, saw what was happening, and quickly shut the restaurant door.

When the defendant fled the scene, Dae Choi ran to his vehicle, got inside, and began chasing him. He stopped when the defendant fired at him but resumed the chase after the defendant stopped shooting and continued his flight. The defendant, however, once again stopped and pointed his weapon at Dae Choi, which caused Dae Choi to strike a wall with his vehicle. At that point, the defendant advanced to within eight feet of the driver's door of Dae Choi's stopped vehicle and fired multiple gunshots at him, in the process putting four bullet holes in the vehicle and shattering the back windshield. Afterwards, the defendant fired a final gunshot at Jang Choi, who had followed on foot behind his son's vehicle, before once again resuming his flight. The defendant was captured a short time later after the police tracked his location through the GPS locator on Dae Choi's cell phone. A black semi-automatic .32 caliber pistol was recovered from underneath the driver's seat of the vehicle from which the defendant was exiting at the time he was apprehended.

The defendant's presentence report, which reflected an extensive criminal history, was admitted as an exhibit to the sentencing hearing. After the parties agreed that the defendant was a Range III, persistent offender and would be required to serve the sentences for his convictions at 100 percent due to his prior aggravated robbery convictions, the State put on evidence of other aggravated robberies for which the defendant was pending trial.

The State's first witness was Kwan Kong, the victim of an August 8, 2010 armed robbery at the New China Restaurant in Nashville. Kong testified that he was closing the door of the restaurant at approximately 10:00 p.m. on Saturday night when a man approached, asked him about two of his coworkers, brought out a gun, and took from him a bag containing approximately $400 to $600. Kong positively identified the defendant as the perpetrator from a photographic lineup he was shown by the police, and he made an

---

[1]The jury acquitted the defendant of the July 27, 2010 aggravated robbery of Jang Choi and was unable to reach a verdict on two other counts of the indictment that charged the defendant with the attempted first degree murder of Dae Choi and the possession of a firearm during a dangerous felony. Those latter two counts were subsequently dismissed.

unequivocal identification of the defendant at the hearing.

Nen Guang Chen, the victim of an August 10, 2010 armed robbery at the China Wok restaurant in Nashville, testified that she, her brother, and another employee were in the restaurant at about 9:00 p.m. when a man came inside, asked the price of the chicken wings, pulled out a gun, and robbed them of approximately $800. Chen said that the gunman first pointed his gun at her fellow employee, a young man who was working at the front of the restaurant. During the robbery, Chen's brother came from the back of the restaurant, saw the gunman, turned to flee, and was shot at by the gunman. Chen positively identified the defendant as the perpetrator from a photographic lineup she was shown by the police shortly after the robbery, but she was unable to make a positive identification of the defendant at the hearing.

Detective Stephen Jolley[2] of the Metro Nashville Police Department, who investigated the China Wok robbery, testified that he learned there were four victims in the case: two employees who were in the front of the restaurant when the gunman entered, the restaurant's owner, who came from the back of the restaurant during the robbery and was shot at by the gunman, and a teenaged delivery driver who returned to the restaurant during the robbery to have the gunman point his gun at him and order him out of the restaurant. Detective Jolley stated that all four victims positively identified the defendant as the perpetrator from separate photographic lineups. In addition, a shell casing recovered from the scene conclusively matched the gun that was recovered with the defendant at the time of his arrest.

Katherine Lentile, the victim of an August 8, 2010 armed robbery in the parking lot of the Midtown Café in Nashville, testified that she and a friend, Kate Smythe, were getting into the passenger side of their vehicle at approximately 12:00 a.m. when a female, who "held her hand like a gun," pushed her into the vehicle and ordered her to give her everything she had. Moments later, a man who was holding an actual gun appeared, and she and her friend gave him their belongings. A third friend, who had been getting into the driver's seat of the vehicle, ran to a gas station and called the police. Lentile stated that both she and Smythe later identified the defendant as the gunman from separate photographic lineups they were shown by the police. Lentile also made a positive courtroom identification of the defendant as the perpetrator.

Detective Patrick McLaughlin of the Metro Nashville Police Department, who investigated the August 8 Midtown Café robbery as well as another armed robbery that occurred in the parking lot of a Nashville Krystal Restaurant on August 10, 2010, testified

_____

[2]We note that this witness was not asked to spell his first name for the court reporter and that it is spelled as both "Stephen" and "Steven" in the transcript.

that both Lentile and Smythe positively identified the defendant as the gunman from photographic lineups that he showed each of them at separate times. He further testified that the two victims of the Krystal robbery, Reginald Cunningham and McKendry Baynham, each positively identified the defendant as the perpetrator in their case. In addition, an unfired .32 caliber cartridge found at the scene of the Krystal robbery was matched to the gun recovered from the defendant at the time of his arrest.

Juan Cruz, the victim of an August 7, 2010 armed robbery at the Super Wok Restaurant in Nashville, testified that he worked as a delivery driver and was walking out the back door of the restaurant at approximately 11:00 p.m. when he was met by the defendant, who showed him his pistol and took the money he had in a bag, which was approximately $250 to $300. Afterwards, the defendant forced him back inside the restaurant, where the defendant robbed another employee, Ms. Lou, of approximately $250 to $300. Cruz identified the defendant as the perpetrator from a photographic lineup he was shown by the police, and he made a positive courtroom identification of him at the hearing.

The final witness was Emily Menke, a victim witness advocate with the district attorney's office, who translated into English a victim impact statement written by Esclante, who described the constant fear in which she had lived since the robbery and expressed her desire that the defendant be appropriately punished so that he would not be able to hurt other individuals.

At the conclusion of the hearing, the trial court applied as enhancement factors the defendant's previous history of criminal convictions and criminal behavior in addition to those necessary to establish his range and the defendant's failure to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (8) (2010). Finding no mitigating factors, the court sentenced the defendant as a Range III, persistent offender to twenty-five years for each offense, which was five years beyond the minimum sentence in his range. See id. § 40-35-112(c)(2). With respect to consecutive sentencing, the court found that the defendant qualified as an offender whose record of criminal activity was extensive but that the factor that "just jump[ed] out" was that he was a dangerous offender whose behavior exhibited little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. See id. § 40-35-115(b)(2), (4). The court, therefore, ordered that the defendant serve one of his twenty-five-year sentences consecutively to the other two concurrent sentences, for a total effective sentence of fifty years at 100 percent. In so doing, the court specifically found that the aggregate fifty-year sentence was reasonably related to the severity of the crimes, which the court characterized as "tremendously horrible," and were necessary to protect the public from further serious criminal conduct by the defendant.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the trial court erred in ordering consecutive sentencing. Specifically, he argues that the order of consecutive sentencing results in an excessive sentence, especially in light of the fact that the sentences had already been enhanced within the range and were required, pursuant to statute, to be served at 100 percent with no possibility of parole. The State disagrees, arguing that the record fully supports the trial court's sentencing determinations. We agree with the State.

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of a number of criteria applies, including that "[t]he defendant is an offender whose record of criminal activity is extensive" or that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2), (4) (2010). When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). The criteria listed in section 40-35-115(b) are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

We conclude that the record supports the imposition of consecutive sentencing under either of the two criteria found by the trial court. As the trial court noted, the defendant's presentence report reflects a fairly extensive criminal history, including three prior aggravated robbery convictions, a number of disciplinary infractions during the time he spent incarcerated, and the fact that his parole was revoked in the three prior aggravated robbery cases. In addition, the circumstances of the instant crimes, in which the defendant fired multiple gunshots at his pursuing victims, as well as the testimony of the robbery victims in his pending cases, clearly show the defendant to be a dangerous offender whose behavior exhibits little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. We, therefore, affirm the sentencing determinations of the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE