IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 16, 2014

## STATE OF TENNESSEE v. JOSEPH KANTRELL NORRIS

**Appeal from the Circuit Court for Williamson County**
**No. CR046389A     Timothy L. Easter, Judge**

_____

**No. M2014-00857-CCA-R3-CD - Filed June 3, 2015**

_____

Defendant, Joseph K. Norris, was indicted by the Williamson County Grand Jury in an 11-count indictment for one count of attempted second degree murder, three counts of especially aggravated kidnapping, one count of especially aggravated burglary, one count of aggravated burglary, one count of aggravated assault, three counts of aggravated robbery, and one count of reckless endangerment. Defendant entered open guilty pleas to one count of attempted second degree murder, three counts of especially aggravated kidnapping, one count of especially aggravated burglary, one count of aggravated burglary, three counts of aggravated robbery, and one count of reckless endangerment. Defendant agreed he would be sentenced as a Range II offender. The trial court sentenced Defendant to serve 20 years for his attempted second degree murder conviction; 40 years at 100 percent for each of his three especially aggravated kidnapping convictions; 20 years for his especially aggravated burglary conviction; ten years for his aggravated burglary conviction; 20 years at 85 percent for each of his three aggravated robbery convictions; and four years for his reckless endangerment conviction. The trial court ordered that Defendant's sentences for attempted second degree murder, especially aggravated burglary, and aggravated robbery run concurrently with each other but consecutively to his sentences for three counts of especially aggravated kidnapping, which the trial court ordered to be served consecutively, for a total effective sentence of 140 years. Defendant's sentences for aggravated burglary and reckless endangerment were ordered to be served concurrently with all other counts. Defendant appeals as of right, arguing that his sentence is excessive. After a careful review of the record on appeal and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Vanessa P. Bryan, District Public Defender; and Susan V. Logan, Assistant Public Defender, Franklin, Tennessee, for the appellant, Joseph Kantrell Norris.

Herbert H. Slatery, III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Kim R. Helper, District Attorney General; and Terry Wood, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Guilty plea hearing*

At the guilty plea hearing, the State set forth the factual basis for Defendant's pleas. On December 23, 2011, Mary Runion and Michelle Chestnut went to Sharon Perkins' home in Franklin to deliver Christmas presents, groceries, and gift cards. As they were carrying in the last load of items, Ms. Runion saw some men congregating on the side of Ms. Perkins' home. Ms. Runion took her purse and Ms. Chestnut's purse inside the home. Shortly after that, four armed men wearing masks entered the home. They wanted to know where Tory "One Eye" Dunlap lived. Mr. Dunlap lived in the other side of the duplex where Ms. Perkins lived. Ms. Perkins told the men that they were at the wrong house, but the men held the women confined in the living room and demanded their purses and cell phones.

The men ordered Ms. Perkins to go next door and knock on Mr. Dunlap's door. She was told that if she "tried anything, that she and the other women would be shot." Ms. Perkins knocked on Mr. Dunlap's door, and there was no answer. When she returned, the men ordered all three women to go to the area behind Mr. Dunlap's residence. One of the men, Deangelo Miller, attempted to kick in Mr. Dunlap's back door, but was unsuccessful. He then broke the kitchen window with his gun. He slipped and cut himself and left blood evidence on the window. Another gunman, Alonzo Howard, entered the apartment through the kitchen window and opened the back door for the others to enter. The men ordered the three women to sit on a futon bed in the living room. One of the men, Michael Daily, held the women captive with an assault rifle while the others searched the apartment for items to steal. Mr. Miller found a bag of marijuana and a "cashbox." Either Mr. Miller or Mr. Daily shook the bag of marijuana in front of Ms. Chestnut's face and said, "this is what we came for."

At some point the women were forced to the living room floor, where Mr. Daily attempted to tie up Ms. Chestnut using an electrical cord. Mr. Howard was finishing tying up Ms. Chestnut when Mr. Dunlap, his girlfriend, and their three children arrived home. Mr. Dunlap opened the door and saw a person in his kitchen going through his cabinets and another person in his living room holding a gun. He heard gunshots and pulled the door shut.

2

Mr. Howard fired six shots. Four of the shots went through the door, one went to the right of the door, and one went to the left of the door, where Mr. Dunlap's two-year-old child was sleeping in her carseat. Mr. Dunlap was shot twice in the leg. The men fled the scene to a waiting car that was driven by Trandis Patterson.

Approximately two weeks prior to the incident, Defendant went to Jason and Denise Coleman's house and asked them where Mr. Dunlap lived. Defendant stated that he heard Mr. Dunlap had cash, and he wanted to rob him. Mr. Dunlap lived behind the Colemans' house. On December 23, 2011, Defendant returned to the Colemans' house, asking about Mr. Dunlap. The Colemans' son told Defendant the general area where Mr. Dunlap lived. Within an hour, they heard gunshots coming from Mr. Dunlap's house.

*Sentencing hearing*

At the sentencing hearing, the trial court noted that Defendant would be sentenced as a Range II offender as agreed upon by the parties. The presentence report and victim impact statements were entered as exhibits.

Deangelo Miller testified that it was Defendant's idea to rob Mr. Dunlap. Defendant gave Mr. Miller a .25 caliber gun. He testified that all four men were armed and wearing ski masks. He testified that Defendant directed the men during the commission of the offenses. He testified that Defendant and Alonzo Howard fired shots at Mr. Dunlap. He testified that later that night, Defendant told him, "I fired him up." Mr. Miller testified that the men fled after the shooting, and Defendant later divided the marijuana taken from Mr. Dunlap's home between the men.

On cross-examination, Mr. Miller testified that Michael Daily, who he believed was Defendant's stepson, was the one who approached him about the robbery. Mr. Miller acknowledged that he expected to receive leniency from the State in exchange for his testimony.

Tory Dunlap testified that he continued to suffer from problems as a result of the gunshot wounds to his leg. He testified that he could not stand for long periods of time at work. Mr. Dunlap testified that after the men left, his house "looked like a tornado went through it[.]"

Detective Chad Pace testified that he investigated the case. He recovered shell casings from the living room and kitchen in Mr. Dunlap's home.

Defendant did not testify or offer any other proof at the sentencing hearing.

3

At the conclusion of the hearing, the trial court stated that it had considered the evidence presented at the sentencing hearing, the presentence report and victim impact statements, the principles of sentencing and arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, enhancement and mitigating factors, and statistical information provided by the Administrative Office of the Courts. The trial court noted that Defendant had chosen not to make a statement on his own behalf. The trial court found that Defendant had a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range. The presentence report showed that Defendant had six prior felony convictions and five prior misdemeanor convictions. Additionally, the court found that Defendant was a leader in the commission of an offense involving two or more criminal actors. The court noted that it was undisputed that Defendant was on parole at the time the offenses were committed. The trial court found no applicable mitigating factors and imposed a sentence of 40 years to be served at 100 percent for each of Defendant's three especially aggravated kidnapping convictions; 20 years each for Defendant's convictions for attempted second degree murder and especially aggravated burglary; 20 years to be served at 85 percent for each of Defendant's three convictions for aggravated robbery; ten years for Defendant's aggravated burglary conviction; and four years for Defendant's reckless endangerment conviction.

The trial court concluded that Defendant's sentences would be mandatorily consecutive to a ten-year sentence for which he was on parole at the time of the offenses in this case. Regarding consecutive sentencing for the offenses in this case, the trial court found that Defendant was an offender who had an extensive history of criminal activity. The court found that Defendant was a dangerous offender whose behavior indicated little or no regard for human life and that he had no hesitation about committing a crime in which the risk to human life was high. The court noted that Defendant's conduct "shocks the Court and should shock this community[.]" The court emphasized that Defendant was "the leader, providing the weapons, shooting at Mr. Dunlap when there w[ere] innocent folks around." The court found that consecutive sentencing was reasonably related to the severity of the offenses committed and necessary to protect the public from further criminal conduct by Defendant. The court concluded that consecutive sentencing was "absolutely appropriate."

The trial court ordered that Defendant's 40-year sentences for three counts of especially aggravated kidnapping would run consecutively to each other; Defendant's five 20-year sentences for Class B felonies would run concurrently with each other but consecutively to his 40-year sentences; and Defendant's ten-year and four-year sentences would run concurrently with each other and concurrently with his other sentences, for a total effective sentence of 140 years. The trial court concluded that Defendant's sentences were no greater than that deserved for the offenses committed and the least severe measure to

4

achieve the purpose for which they were imposed, which the trial court found was "to protect this society from a dangerous, extremely dangerous individual."

*Analysis*

Defendant challenges both the length of his sentences and the trial court's order of consecutive sentencing.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors

5

[is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

The applicable sentencing range for a Range II offender convicted of: a Class A felony is 25 to 40 years; a Class B felony is 12 to 20 years; a Class C felony is 6 to10 years; and a Class E felony is 2 to 4 years. T.C.A. § 40-35-112(b). The trial court imposed the highest sentence within each range for each of Defendant's convictions.

Defendant acknowledges that the trial court stated on the record its findings regarding applicable enhancement and mitigating factors and that even a trial court's misapplication of enhancement or mitigating factors is no longer a basis for reversal. Defendant asserts, however, that his effective 140-year sentence is excessive and inconsistent with the primary purpose and principles of the Sentencing Act. Defendant argues that the trial court gave improper weight to its finding that Defendant was on parole when he committed the offenses in this case, finding that "the criminal justice system has failed miserably and I guess we all bear some responsibility for that, but I fail to see how a person could be out committing robbery when he was supposed to be in prison for 10 years on the very date he committed the robbery other than a failure in our parole system." Defendant points out that his parole status "had already significantly enhanced [his] sentence by the mandatory consecutive sentence requirement" pursuant to Tennessee Rule of Criminal Procedure 32(c)(3)(A).

Having reviewed the record before us, we conclude that the trial court clearly stated on the record its reasons for imposing the sentences imposed, and all of Defendant's sentences are within the appropriate ranges. The trial court found three applicable enhancement factors and no applicable mitigating factors. The record reflects that the trial court considered the purposes and principles of the Sentencing Act. Therefore, the trial court's imposition of the maximum sentences is presumed reasonable.

Our supreme court has also extended the standard of review enunciated in *State v. Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). Tennessee Code Annotated section 40-35-115 sets forth the factors that are relevant in determining whether sentences should run concurrently or consecutively. The trial court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the seven statutory factors exist. *Id.* § -115(b). Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). The length

of the resulting sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2).

In *Pollard*, the court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." 432 S.W.3d at 862. "So long as a trial court properly articulates its reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id*.; *Bise*, 380 S.W.3d at 705.

In the instant case, the trial court found two statutory factors, either of which alone would be sufficient to support the imposition of consecutive sentencing. The trial court found that Defendant was an offender whose record of criminal activity was extensive and that Defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. With regard to the court's finding that Defendant was a "dangerous offender," the trial court further found that consecutive sentences were reasonably related to the severity of the offenses committed and were necessary to protect the public from further criminal conduct by the defendant, as required by *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995).

We conclude that the trial court did not abuse its discretion in sentencing Defendant. Accordingly, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE